HELEN BERUBE *vs.* ECONOMY GROCERY STORES
CORPORATION
(and a companion case [1]).

Suffolk.   October 28, 1943. — November 30, 1943.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Negligence*, Store.

Evidence of the dirty, black and gritty character of a mass, about a foot
square, of seeds and other inside parts of a squash on the floor of a
store near a counter where squash were displayed, and that employees
of the store would be likely to be at that place, warranted a finding
that the mass had been on the floor so long that the proprietor of the
store was guilty of negligence toward a customer who slipped on the
mass, fell and was injured.

TWO ACTIONS OF TORT.  Writs in the Municipal Court of
the Dorchester District dated, respectively, July 9, 1940,
and July 18, 1941.

On removal to the Superior Court, the cases were tried
before *Walsh*, J.  In this court they were submitted on
briefs.

*F. I. Rose & L. Jablon*, for the plaintiffs.

*R. J. Coffin & T. H. Mahony*, for the defendant.

DOLAN, J.  These are actions of tort, the first to recover
compensation for personal injuries, sustained by the plain-
tiff, alleged to have been caused by the negligence of the
defendant, and the second by her husband to recover con-
sequential damages.

The jury could have found properly the following facts:
On the day of the accident the plaintiff Helen (hereinafter
referred to as the plaintiff), in the company of her sister,
was shopping in the defendant's so called "Stop and Shop"
market on River Street in Hyde Park.  Entering the shop
the plaintiff walked by a "long vegetable counter" on her

---

[1] The companion case was by Robert Berube against the same defendant.

right. Reaching the end of the counter she proceeded to turn and "walk past the end of the counter." On the end of this counter were displayed "boxes of squash" which were "raised on some other boxes or bags and which were tilted in a slanting direction backward." Turning at the end of this counter the plaintiff "felt . . . [her] heel get caught in something hard . . . 'stiff like,'" and she "skidded right down, falling on . . . [her] back in a twisting way . . . [she] could feel , . . [her] foot skid in something that was underneath . . . [her] right foot." There was a "big skid" mark where the plaintiff fell. When she arose she saw that what she slid on was "squash seeds . . . like shavings and seeds too, all the center of the squash . . . and it was all dirty and grimy looking." It was about a foot in area. Some of the seeds that were on the floor were very dirty and black, some of the seeds were still sticking into the "mass" that remained on the floor; others, dislodged by the plaintiff's foot, were of a yellow color and lighter than those that were left. Some of the seeds that adhered to the plaintiff's shoe were "very dirty looking . . . very black looking." The "mass" that remained on the floor not affected by the "skid mark," the "inside of the squash," was "dark and stringy looking." The distance from the boxes of squashes to the place where the plaintiff fell was about "one . . . foot or a little more." In these boxes there were some whole squashes and different sized pieces of cut squash, and "as you looked at the boxes you could see the seeds and all the other insides of the squash." There were "shells or seeds from 'squash [on the floor] . . . the stringy section and the spongy section." It was "dirty, kind of gritty, just as if it had been stepped on or walked on. It was located just about where . . . [the plaintiff] fell." The "substance on the floor took up an area of about a foot. . . . It was like a mound . . . dirty, black and sooty, gritty and just black." The mound was about one half inch in thickness, "something like a pancake."

The jury found for the plaintiff in each case, but under reserved leave the judge entered a verdict in each case for

the defendant, to which action the plaintiffs duly excepted. We are of opinion that this action of the judge was erroneous.

The principles governing the duty of the defendant to those entering its store for the purpose of purchasing goods are firmly established to the effect that the defendant was bound to use due care to keep that portion of the premises provided for the use of its patrons in a reasonably safe condition, and to warn them of any dangers that might arise from such use by reason of a condition of the premises, which were not likely to be known to its patrons and of which the defendant knew or ought to have known. *Heina* v. *Broadway Fruit Market, Inc.* 304 Mass. 608, 610, and cases cited. *Noble* v. *Park Enterprises, Inc.* 313 Mass. 454, 457–458.

The defendant argues, however, that the evidence would not warrant the jury in finding that any agent or servant of the defendant caused the squash, upon which the plaintiff slipped, to be upon the floor, or that any employee of the defendant was in a position to see the foreign substance upon the floor, or that it had been there "sufficiently long to charge the defendant with knowledge of its presence and reasonable opportunity to remove it." In support of these contentions the defendant argues that there was no evidence to show that any employee of the defendant was "anywhere in the vicinity" where the plaintiff fell, directing attention to the fact that the accident occurred in a "Stop and Shop" market where "the customers waited upon themselves," and urging that the condition of the squash upon which the plaintiff fell, as described by the plaintiff and other witnesses, was not sufficient to warrant a finding that it had been on the floor long enough to enable the defendant to discover and remove it.

The evidence, however, would have warranted the jury in finding that customers of the defendant's market did not wait upon themselves in purchasing squash, that they did not pick out the squash, but that it would be measured for them and weighed by an employee of the defendant at the vegetable counter and delivered to the customer. The jury could also have found that the boxes of squash were placed

by servants or agents of the defendant upon the counter for those purposes, and could have inferred that it was necessary therefor that some employee of the defendant be present at or near the vegetable counter at the time of the accident, referred to by the defendant in its brief as a "busy evening."

It is unnecessary to decide whether the jury would have been warranted in finding on the evidence that the piece of squash involved was dropped on the floor by one of the defendant's employees in placing the boxes containing squash split into different sections on the vegetable counter, or was caused to fall upon the floor by the tilted position of the boxes on the counter, since we are of opinion that, at least, the jury could have found that the mound of squash "about a foot" in area, lying upon the floor about a foot from the place on the vegetable counter where the boxes of squash were resting, had been on the floor long enough to have been removed before the accident, and that it had remained on the floor until the time of the injury because of negligence of the defendant. The character of the substance, its consistency, its sticky mass, its grimy, dirty color, its size and general appearance, would have warranted the jury in making the findings just referred to. *Foley* v. *F. W. Woolworth Co.* 293 Mass. 232, 234. *Connair* v. *J. H. Beattie Co.* 298 Mass. 550, 551. *Bavosi* v. *Interstate Theatres Corp.* 307 Mass. 124, 125, and cases cited.

In each case the plaintiff's exception to the entry of a verdict for the defendant under the reserved leave is sustained and judgment is to be entered for the plaintiff on the verdict returned by the jury.

*So ordered.*