Mrs. Gladys REGISTER

v.

GREAT ATLANTIC & PACIFIC TEA COMPANY.

Civ. A. No. 456.

United States District Court
E. D. North Carolina,
New Bern Division.

March 6, 1964.

Jones, Reed & Griffin, Kinston, N. C., for plaintiff.

White & Aycock, Kinston, N. C., for defendant.

STERLING HUTCHESON, District Judge.

The plaintiff is a resident of North Carolina and the defendant is a foreign corporation authorized to do business in North Carolina.

This action is to recover damages for personal injuries alleged to have been caused by the defendant. The court has jurisdiction under the Diversity Statute.

On June 8, 1956 plaintiff, Mrs. Gladys Register, who resides in Lenoir County, entered the retail self-service grocery store operated by the defendant in the city of Kinston for the purpose of making purchases.

Accompanied by her daughter-in-law, Mrs. Sally Register, the plaintiff entered the store, turned right, where the marketing carts were located. Her daughter-in-law selected a cart and proceeded to turn left into an aisle leading by the frozen food department. At the end of that department was located the vegetable department. To the left of the point where the two departments met was another aisle passing between other containers upon which produce was displayed. Proceeding through this aisle, the daughter-in-law, Mrs. Sally Register, propelling the cart, again turned right into an aisle, to the left of which were shelves containing, among other articles, salad dressing. The Plaintiff, who was seeking salad dressing, followed Mrs. Sally Register. After entering the last mentioned aisle, the plaintiff slipped and fell, receiving severe injuries. It was shown that the substance upon which she slipped was a piece of celery stalk about two to three inches long, flat, mangled, mushy, brownish, wet and gritty. From the marks, it appeared that the fall was caused by the flat wedge-shaped heel of plaintiff's shoe descending upon the celery which left a mark on the floor extending from one to two feet.

This occurrence took place a few minutes after two o'clock P.M. The porter, whose duty it was to sweep the floor twice during the morning and twice during the afternoon, with spot cleaning in the meantime when needed, had returned from his lunch at two o'clock. This was established not only by the testimony of the porter but by the testimony of three other employees of the defendant. The store was approximately 75 x 150 feet and there were six aisles extending lengthwise. Approximately ten minutes before the plaintiff fell the porter, beginning at the frozen food department, had been over the floor with a string mop. He testified that when the plaintiff fell, he had completed all six aisles and had put away his mop. At the point the plaintiff fell, the display stands to her left extended to the floor. To her right the display stands consisted of bins with floor spaces open below the containers.

It was testified in behalf of the defendant that its policy was to keep the floor clean and employees were charged with the duty of removing any objects found in the aisles. The store was properly lighted and the floor was covered with gray and green tile.

■■ The defendant is not an insurer of the safety of the plaintiff but is charged with the duty to keep its premises in a reasonably safe condition, which implies the duty to make reasonable inspections and to correct any defective condition which was discovered or in the exercise of reasonable care should have been discovered. The doctrine of *res ipsa loquitur* does not apply. To recover, the injured party must show that the defendant knew, or by exercise of due care, should have known of its presence in time to have removed the danger or given proper warning of its presence.

In the absence of such proof, the plaintiff's case must fail. The North Carolina decisions clearly lay down this principle.

However, we are here confronted with a set of facts which differ in material points from any North Carolina decision which has been cited excepting Raper v. McCrory-McLellan, Corp., 259 N.C. 199, 130 S.E.2d 281. The first deals with defendant's notice of the presence of the substance and to an inference to be drawn

from the condition of the slippery substance which caused the fall.

*Notice to the Defendant.* The evidence is undisputed and is shown by testimony of the defendant's witnesses that some 5 to 10 minutes before the plaintiff fell, the porter had passed over this spot in connection with his duties to keep the floor clean. There is no evidence indicating that any other person had been through the aisle between the time the porter was there until the plaintiff fell. Neither the plaintiff nor Mrs. Sally Register observed any one in that vicinity and the defendant's witnesses did not testify to having seen anyone. Neither the plaintiff nor Mrs. Sally Register had made any selection at the vegetable stand. The hour of the occurrence has some significance because of testimony to the effect that this was a slack time of the day where customers were concerned and a number of employees were at lunch. If the substance was in the aisle when he passed the point, the porter, in the exercise of ordinary care, should have observed its presence and his failure to do so constituted negligence, which is attributable to the defendant.

From the facts of this case it seems to be controlled by the rule clearly stated by Mr. Justice Parker in the recent case of Raper v. McCrary-McLellan Corporation, 259 N.C. 199, 130 S.E.2d 281. See Also Pogue v. Great Atlantic & Pacific Tea Company, 5 Cir., 242 F.2d 575.

The facts are even more favorable to the plaintiff than those in Raper. There the dangerous condition had existed for only a brief period of time after the employee was alleged to have had notice. Here the porter, the last person shown to have been in the area, had completed mopping the entire remaining portion of the store. The conclusion is inescapable that the substance was on the floor when the porter passed or was placed there by his negligence in the mopping operations.

*Condition of the Substance.* While the North Carolina Court does not appear to have given consideration to this principle in a similar factual situation, it has been recognized in other jurisdictions that the condition of food substance on the floor permits an inference of constructive notice to be drawn. Morris v. King Cole Stores, 132 Conn. 489, 45 A.2d 710; Great Atlantic & Pac. Tea Co. v. Popkins, 260 Ala. 97, 69 So.2d 274; S. H. Kress & Company v. Selph, Tex. Civ.App., 250 S.W.2d 883; Berube v. Economy Grocery Stores Corporation, 315 Mass. 89, 51 N.E.2d 777.

In the case at bar, the description of the piece of celery indicates that it was not a piece recently dropped by a customer. On the contrary, the description leads to the conclusion that the substance had deteriorated either by age or by previously having been mashed and mangled. It is unrealistic to conclude from the evidence that it had been recently mashed. It is reasonable to infer that it had become deteriorated while lying on the floor under the fruit or vegetable bin from where it was dislodged by the mop of the porter while passing through the aisles which the evidence shows was done some 10 or 15 minutes before the plaintiff was injured.

While the proof is not direct, it is my conclusion, for reasons stated, that a dangerous condition existed, that the defendant is chargeable with notice of its presence and the plaintiff should recover.

At the time she was injured, plaintiff was fifty eight years of age. Her left arm was broken and she received severe injury to her left shoulder. She spent ten days in a hospital and her arm remained bound up for about ten days longer. She was confined to her bed, at home about half the time except when going to see doctors for about three months. The use of her shoulder and left arm are permanently impaired by 50% of normal. She continues to suffer pain from the arm and shoulder and from shingles as a result. She has incurred expenses in excess of $1500.00.

Prior to her injuries plaintiff was an active woman. She assisted her husband in his farm work, attended to her house

work and drove an automobile. She is now able to do no more than the lightest work around the house. Her entire way of life has been changed. She had a life expectancy of 17.30 years.

I fix her damages in the amount of $12,500.00 with cost and interest from the date of judgment.

Let judgment be entered.