JANICE BILLMAN WILLIAMS v. THOMAS E. (JOCK) TYSINGER AND WIFE, PEGGY J. TYSINGER

No. 133A90

(Filed 10 January 1991)

**1. Animals, Livestock, or Poultry § 11 (NCI4th)— child kicked by horse—directed verdict for owner—error**

The trial court erred by granting directed verdict for defendants in a negligence action arising from defendants' horse kicking plaintiff's son where the gravamen of plaintiff's complaint was not keeping a dangerous animal, but that defendants were negligent in encouraging the two children, who had never been around horses, to play with the horse while unsupervised. The question of defendants' negligence does not depend upon defendants' knowledge of the horse's vicious or dangerous propensities, and it was not necessary that such evidence be presented.

**Am Jur 2d, Animals §§ 86, 89, 100, 104.**

**2. Animals, Livestock, or Poultry § 11 (NCI4th)— child kicked by horse—contributory negligence of parent**

It cannot be said as a matter of law in a negligence action that plaintiff was contributorily negligent in allowing her sons to go unattended to play with the horse after defendants told her that the horse was gentle and that their children and grandchildren all played with the horse.

**Am Jur 2d, Animals §§ 100, 104, 108.**

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 97 N.C. App. 438, 388 S.E.2d 616 (1990), affirming the judgment of *Wood, J.,* at the 30 August 1988 Session of Superior Court, RANDOLPH County. Heard in the Supreme Court 6 September 1990.

*Ottway Burton, P.A., by Ottway Burton, for plaintiff-appellant.*

*Henson Henson Bayliss & Sue, by Jack B. Bayliss, Jr., and Lawrence J. D'Amelio, III, for defendant-appellees.*

WILLIAMS v. TYSINGER

[328 N.C. 55 (1991)]

FRYE, Justice.

In this appeal plaintiff raises the single issue of whether the trial court correctly granted a directed verdict to defendants because plaintiff failed to make a showing that defendants had any prior knowledge, actual or constructive, that their horse had any dangerous or vicious propensities. The Court of Appeals held that the directed verdict was properly granted because plaintiff failed to produce any evidence that defendants had knowledge of the horse's vicious propensities or evidence that a reasonable person would have had such knowledge. We conclude that under the facts of this case, making a showing that defendants had actual or constructive knowledge that their horse had vicious propensities is not necessary for plaintiff to prove defendants' negligence, and thus the trial court erred in granting defendants' motion for directed verdict.

Matthew Jonathan (Jimmy) Bowen, the son of plaintiff Janice Williams, was injured on 28 May 1983 when a horse owned by defendants, Thomas E. and Peggy J. Tysinger, kicked Jimmy in the head causing him to stay in the hospital overnight for observation of a possible concussion and causing permanent dental injury. Plaintiff instituted this action seeking recovery of Jimmy's medical expenses which were incurred as a result of this accident.

Plaintiff, her husband, and her two sons, Jimmy and Daniel Bowen, went to defendants' house on the afternoon of 28 May 1983. At the time of this incident, Jimmy was nine years old, and Daniel was eleven years old. Mr. Tysinger owned a sawmill which was located a few miles from his house, and he had his office for this lumber business at his house. Plaintiff and her husband had ordered some lumber from Mr. Tysinger, and they went to his house that afternoon to find out if the lumber was ready. When they arrived, the two boys were told to wait in the car, and plaintiff and her husband went to the house to talk with the Tysingers, who were both sitting on the front porch of the house. The four adults sat on the porch and talked for about ten minutes, and then Mr. Tysinger told Mr. Williams, plaintiff's husband, that he wanted to show him a new gun. Realizing that they were going to stay at least for a few more minutes, plaintiff called to her sons and told them that they could get out of the car and wait with her on the porch.

As the two boys reached the porch, Mr. Tysinger suggested that the boys go around to the pasture in the back of the house

and play with the horse and cow which he kept there. In her testimony at trial, plaintiff related the following exchange:

And Mr. Tysinger told the boys that he had a horse and cow in the backyard, and he told me to let them go out and play with it. And I asked him, I said, "The boys have never been around any wild animals." They'd never been around any animals. I said, "Are you sure." And Mrs. Tysinger said that her children, her grandchildren had been raised up around the horse and cow, and that it would not hurt anyone. Well, as they was standing, fixing to go into the livingroom, which was — when you open up the door you went into the livingroom —.

. . .

I turned around and I asked Jock again, I said, "Are you sure." I said "Because they have never been around no animals." and He sid (sic), "Yes." So, the boys proceeded to go into he (sic) backyard —

Later in her testimony, plaintiff stated, "I asked him [Mr. Tysinger] three times if he was sure." In further response to questioning, plaintiff replied, "Each time he told me, he assured me one hundred percent that the animal would not hurt nobody. Not just my children, but nobody."

The boys went to the pasture, and a few minutes later, Daniel, the older boy, called his mother to hurry to the pasture because Jimmy, the younger boy, had been hurt. When plaintiff reached the pasture, she found Jimmy lying on his back in the field.

Daniel testified that when he and his brother reached the pasture, they began petting the forehead of the horse and feeding it some grass. The horse walked away from the fence, and Jimmy crawled under the fence to pet the horse some more. Daniel also crossed the fence and noticed that the horse looked like it was going to run. The horse stood on its front legs and kicked Jimmy. Daniel testified that Jimmy landed on his back some three feet back from where he had been standing when the horse kicked him.

Plaintiff also testified that after the rescue workers arrived and as they attended Jimmy, the horse came charging up to the rescue workers. According to plaintiff, the horse got on its back legs and was standing over the workers as they attended her son there in the pasture. At that time, Mr. Tysinger came across the fence into the pasture and tried to get the horse away from

the workers. Plaintiff testified that the horse then tried to kick Mr. Tysinger and that he called to Ms. Tysinger who came into the pasture and moved the horse into a nearby barn.

After plaintiff presented her evidence, the trial court granted defendants' motion for directed verdict. Plaintiff appealed to the Court of Appeals which found no error in the trial court's grant of defendants' motion for directed verdict. *Williams v. Tysinger*, 97 N.C. App. 438, 388 S.E.2d 616 (1990). The Court of Appeals concluded that the directed verdict was proper because plaintiff failed to produce evidence of defendants' knowledge of the horse's vicious propensities or evidence that a reasonable person would have had such knowledge. *Id.* Judge Phillips dissented, concluding:

> Plaintiff's action does not fit into the "keeping a dangerous animal" niche that the majority confines it to. The main thrust of the complaint, her evidence, and her argument here is that defendants were negligent in inviting and encouraging inexperienced children to go into the horse lot by themselves and play with the animal."

*Id.* at 441-42, 388 S.E.2d at 619.

[1]  When reviewing a trial court's grant of directed verdict, the court must review all of the evidence in the light most favorable to the nonmoving party, which in the present case is plaintiff. *Thames v. Teer Co.*, 267 N.C. 565, 148 S.E.2d 527 (1967). When viewing the evidence in the light most favorable to the plaintiff, we agree with Judge Phillips that the gravamen of plaintiff's complaint is not keeping a dangerous animal, rather it is that defendants were negligent in encouraging the two children, who had never been around horses, to go play with the horse while unsupervised. As noted in the portion of the transcript which is included in this opinion, plaintiff testified that she asked the defendants three times if it was safe for her boys to go play with the horse because they had never been around large animals. Each time either Mr. or Ms. Tysinger answered that it would be safe for the boys to play with the horse.

Defendants contend that the Court of Appeals was correct that the directed verdict was appropriate because plaintiff presented no evidence that defendants knew or should have known that the horse had vicious or dangerous propensities and that in order for plaintiff to recover she must present this evidence. The real issue

is whether plaintiff under the facts of this case has to make a showing of the dangerous propensities of the horse and the owner's knowledge of these propensities in order to recover. The "knowledge by the owner of the vicious propensities of his horse is not always essential to a recovery in an action for injuries alleged to have been caused by the owner's negligence." *Lloyd v. Bowen*, 170 N.C. 216, 221, 86 S.E. 797, 799 (1915). Thus, "not all actions seeking recovery for damage caused by a domestic animal need involve the vicious propensity rule." *Griner v. Smith*, 43 N.C. App. 400, 407, 259 S.E.2d 383, 388 (1979).

*Griner* provides us with a history of the law concerning actions involving the dangerous propensity rule. *See Griner*, 43 N.C. App. at 405-08, 259 S.E.2d at 387-88. *Griner* states the same rule stated by the Court of Appeals in the present case that before a plaintiff can recover for injuries caused by the domestic animal, the animal must be shown to have a vicious propensity and the owner must be shown to have actual or constructive knowledge of this propensity to be held liable for the damage which results. *Id.* at 407, 259 S.E.2d at 388. *Griner* then goes on to point out that this rule is not to be applied where the "injury is caused by conduct other than viciousness of an animal." *Id.* According to *Griner*, the accepted rule is "[t]he owner of a domestic animal is chargeable with knowledge of the general propensities of certain animals and he must exercise due care to prevent injury from reasonably anticipated conduct." *Id.*

*Lloyd v. Bowen* involved a situation where the owner of a horse had tied the horse to the dead limb of a tree. *Lloyd*, 170 N.C. at 217, 86 S.E. at 797. The horse broke loose from the limb and ran away. Plaintiff was walking down the street when the runaway horse knocked him down, injuring him seriously. *Id.* at 217-18, 86 S.E. at 797. Defendant complained that the trial court erred in not giving an instruction about defendant's knowledge of the dangerous propensities of the horse. However, this Court concluded that failure to give that instruction was not error because the "question of negligence in regard to the horse did not depend, in this case, solely upon defendant's previous knowledge of his vicious or unruly habits. It would be a circumstance to be weighed with others disclosed by the evidence." *Id.* at 220, 86 S.E. at 798.

As with *Lloyd*, the question of defendants' negligence in the present case does not depend upon defendants' knowledge of the

horse's vicious or dangerous propensities, and it was not necessary that such evidence be presented. The gravamen of this action is not the wrongful keeping of a vicious animal; rather the gravamen is the encouraging of two young children to play with a horse after being warned by the children's mother that they had no familiarity with horses or any other large animals. As *Griner* concluded, defendants, as the owners of the horse, are "chargeable with knowledge of the general propensities" of the horse. *Griner*, 43 N.C. App. at 407, 259 S.E.2d at 388. This knowledge of the general propensities of the horse would include the fact that the horse might kick without warning or might inadvertently step on a person. This is just the nature of the animal, and such behavior does not necessarily indicate that the horse is vicious. Young children who are the ages of the boys in this case and who had never been around horses might not know of these dangers. *But see Whitcanock v. Nelson*, 81 Ill. App. 3d 186, 192, 400 N.E.2d 998, 1002 (1980) ("We believe that children generally would be capable of appreciating the natural propensities of a fenced horse to bite, kick, and run and would take necessary precautions to avoid injury therefrom generally."). We conclude that the trial court erred in granting defendants' motion for directed verdict at the end of plaintiff's evidence and that the question of defendants' negligence in sending the young boys unsupervised to play with the horse is a question for the jury.

[2] Defendants also claim that they are not responsible for the injury and resulting damages because plaintiff, the boys' mother, was on the premises when Jimmy was injured and that she is responsible for the care, supervision and safety of her children. This issue properly goes to the question of contributory negligence which defendants raised as a matter of defense in their answer. The issue of contributory negligence is usually a question for the jury. *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 379 S.E.2d 719 (1990). On the facts of this case, we cannot say as a matter of law that plaintiff was contributorily negligent in allowing the boys to go unattended to play with the horse after defendants told her that the horse was gentle and that their children and grandchildren all played with the horse. Thus, this issue, like the question of defendants' negligence, is a question for the jury.

For the reasons stated above, the decision of the Court of Appeals affirming the trial court's grant of directed verdict for defendants is reversed, and this case is remanded to the Court

of Appeals for remand to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.