RICHARD RAY HILL AND WIFE, SOPHIA HILL, PLAINTIFFS v. STEPHEN T. WILLIAMS AND WIFE, PATRICIA WILLIAMS, DEFENDANTS AND THIRD-PARTY PLAINTIFFS v. DELLINGER DRYWALL, INC., THIRD-PARTY DEFENDANT

No. COA00-222

(Filed 5 June 2001)

## 1. Discovery— interrogatories—failure to supplement—sanctions denied

The trial court did not abuse its discretion by denying defendants' pre-trial motions for sanctions in a negligence action arising from a Rottweiler attack where plaintiffs did not supplement their responses to interrogatories regarding a veterinarian's testimony, defendants filed motions in limine to prohibit the testimony and for sanctions on the morning of trial, and the court denied those motions but ordered that the witness be made available to defendants by telephone that day. Defendants sought to prohibit testimony rather than compel discovery, defendants' motions did not reference a Rule of Civil Procedure, defendants were aware of the witness four months before trial and aware of plaintiffs' intention that he render opinions on the Rottweiler breed two months before trial, defendants declined to depose the witness and waited until the week of trial to file their motions, and the court afforded defendants the opportunity to "depose" the witness.

## 2. Witnesses— expert—veterinarian—characteristics of Rottweilers

A veterinarian's opinion testimony regarding the Rottweiler breed was admissible in a negligence action arising from an attack by a Rottweiler where the witness testified that he had studied the characteristics and behavioral traits of various breeds while in veterinary school, that he was a small animal practicing veterinarian, and that he had cared for approximately five hundred Rottweilers. The court did not abuse its discretion by deter-

**HILL v. WILLIAMS**

[144 N.C. App. 45 (2001)]

mining that the witness was better qualified than the average juror to have an opinion on the characteristics of the breed; his testimony was not rendered inadmissible because he was not specifically an expert on Rottweilers.

**3. Animals— dog attack—negligence action—knowledge of breed characteristics**

The trial court did not err by denying defendants' motions for a directed verdict and judgment notwithstanding the verdict in a negligence action arising from a Rottweiler attack where the action was based on defendants being chargeable with knowledge of the general propensities of the breed rather than on knowledge of their dog's vicious propensities; a veterinarian described the Rottweiler breed as strong, aggressive, temperamental, suspicious of strangers, protective of its space, and unpredictable; and defendants offered no evidence to refute that testimony. The question of defendants' negligence in not restraining the dog in light of the knowledge of the breed chargeable to them was for the jury.

**4. Animals— dog attack—contributory negligence**

Motions in a dog attack case for a directed verdict and judgment notwithstanding the verdict based upon plaintiff's contributory negligence were properly denied where plaintiff was working inside defendants' home when he was asked by his employer to assist in repairing a machine outside the house; he went with his employer although he did not trust the dog; he did not provoke or attempt to touch or approach the dog in any way; there was testimony that defendants had told tradespeople that the dog was tame and playful and would not bite; and the dog jumped on plaintiff and bit off his ear. While arguably adequate to submit contributory negligence to the jury, the evidence did not exclude every reasonable inference other than plaintiff's failure to exercise the same care for his safety as a reasonably careful and prudent person under the same or similar circumstances.

Appeal by defendants from judgment entered 22 June 1999 and order entered 9 July 1999 by Judge Richard D. Boner in Lincoln County Superior Court. Heard in the Court of Appeals 10 January 2001.

*Sigmon, Clark, Mackie, Hutton, Hanvey & Ferrell, P.A., by E. Fielding Clark, II, for plaintiff-appellees.*

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by Rex C. Morgan, for defendant-appellants.*

JOHN, Judge.

Defendants and third-party plaintiffs Stephen T. Williams and his wife Patricia Williams (defendants), appeal the trial court's 22 June 1999 judgment (the judgment) and the court's 9 July 1999 order. We conclude defendants' appeal is unfounded.

Plaintiffs Richard Ray Hill (Richard) and his wife, Sophia Hill, filed the instant action 12 February 1997, alleging "Rowdy" (Rowdy), a Rottweiler dog owned by defendants, attacked Richard and severed a portion of his right ear. Plaintiffs sought recovery on two theories. First, plaintiffs asserted defendants were negligent in failing to keep Rowdy restrained while Richard was working on their property. Plaintiffs also claimed defendants knew or should have known of Rowdy's vicious propensities. Plaintiffs sued for actual medical damages, lost wages, and loss of consortium.

Defendants denied plaintiffs' allegations in their 25 March 1997 answer and further pled Richard's alleged contributory negligence as a defense. In addition, defendants subsequently filed a third-party complaint against Drywall, Richard's employer at the time of the incident. Drywall answered, denying the material allegations of the third-party complaint.

The evidence adduced at trial tended to show the following: In February of 1994, Richard, a drywall finisher, was employed by Drywall in the construction of defendants' new home at Lake Norman. Although Drywall employees and other tradespersons worked daily at the residence, defendants were employed in Statesville during the day and Rowdy was allowed to roam their lakefront lot without supervision while defendants were absent. However Rowdy, a fully grown male weighing approximately one hundred-twenty pounds, was constrained by an underground electrical shock fence to restrict him to defendants' property. Richard testified, "he didn't trust the dog," when he first saw it at the premises and consequently placed a scrap piece of sheetrock across the stairway to block Rowdy from coming upstairs where Richard was working at defendants' home.

Robin and Loy Dellinger (Robin; Loy) were co-owners of Drywall. Robin testified that, upon seeing Rowdy during his first visit to the job site, he was "taken back" because the dog was a Rottweiler. Loy related that he asked defendants if the dog would bite him or his employees and was told Rowdy was "playful and he wouldn't bite[.]"

On 16 February 1994, Robin asked Richard to help repair a texturizing machine hooked up to a van parked near the lake on defendants' lot. Although he had seen Rowdy lying near the waterfront earlier that day, Richard stopped his work inside the residence and accompanied Robin to the machine. As the pair began their repairs, Rowdy jumped on Richard, knocked him against the machine, bit off Richard's ear and swallowed it. Robin grabbed Richard and thrust him into the passenger seat of the van. Rowdy thereupon ran to the open passenger side window and again jumped at Richard. After Richard closed the window, Robin drove the van to the hospital. Rowdy pursued the vehicle to the extent allowed by the electric fence. As a result of the attack, Richard underwent substantial surgery and was hospitalized three times.

Mitchell Dellinger (Mitchell) testified that, prior to the commencement of construction on defendants' house, he went to the site to administer ground termite treatment. Rowdy jogged towards Mitchell's truck and barked at him. Mitchell would not get out of the truck because of the size of the dog. When Patricia Williams came out, Mitchell asked her to confine the dog and she did so.

Dr. David Wilson (Dr. Wilson), a local veterinarian who had treated over five hundred Rottweiler dogs since the 1980's, was qualified as plaintiffs' expert witness. Dr. Wilson testified that the Rottweiler breed was brought to the United States from Germany in the mid-1980's for use as a guard dog or a dog of personal protection. He indicated the breed was aggressive and temperamental, suspicious of strangers, protective of their space, and unpredictable. Dr. Wilson further related that he took great care in examining mature Rottweiler dogs in his veterinary practice, and that he had a safety concern with Rottweilers because they were considered to be dogs that might bite. However, he also acknowledged he had seen Rottweiler dogs be great family dogs. Finally, Dr. Wilson conceded he did not consider himself an expert on the behavior characteristics and traits of the Rottweiler breed, and that he had no opinion concerning the Rottweiler in question.

At the close of plaintiffs' evidence, the trial court granted defendants' motion to dismiss plaintiffs' claim of keeping an animal with vicious propensities. However, the court denied defendants' corresponding motion to dismiss plaintiffs' negligence claim.

Defendants testified they had purchased Rowdy as a puppy and family pet in 1990. Karen Knox (Knox), John Brawley (Brawley) and Beth Webster (Webster), friends and relatives of defendants, related having observed Rowdy on several occasions during visits to defendants' home between 1991 and 1994. According to Knox, she had never observed Rowdy act aggressively or in a dangerous manner. Brawley stated Rowdy was a good house pet and especially good with children. Webster indicated she had never observed Rowdy growl and noted the dog acted fine, even when defendants were not at home and other people were on the property. Harry Williams, who constructed the foundation for defendants' new residence, testified that Rowdy acted fine around him and other tradespersons.

At the close of all evidence, defendants' renewed motions for directed verdict were denied. The trial court subsequently instructed the jury that plaintiffs had the burden of proving

> defendants failed to use ordinary care under the existing circumstances by failing to confine or restrain their dog while plaintiff [Richard] was working on their premises[,]

and that defendants' negligence was a proximate cause of Richard's injury. In addition, the jury was instructed that

> the owner of a domestic animal, such as a dog, is charged with knowledge of the general propensities of the animal and the owner must exercise due care to prevent injury from conduct which the owner may reasonably anticipate.

The trial court also submitted to the jury the issues of Richard's alleged contributory negligence, the negligence of third-party defendant Drywall, and plaintiffs' claim of loss of consortium by Richard's wife.

By its verdict, the jury unanimously determined Richard had been injured by the negligence of defendants, that he did not contribute to his injuries by his own negligence, that defendants' negligence proximately caused Richard's wife to lose consortium of her husband, and that the negligence of Drywall did not contribute to Richard's injuries. In a 9 July 1999 order, the trial court denied

defendants' subsequent motion for judgment notwithstanding the verdict. Defendants appeal.

**[1]** Defendants' first contend the trial court erred by denying their pre-trial motions *in limine* to prohibit the testimony of Dr. Wilson and for sanctions (defendants' pre-trial motions). We disagree.

Review of the procedural context of defendants' pre-trial motions reveals the instant complaint was filed 12 February 1997. In July 1997, defendants filed interrogatories requesting, *inter alia*, certain information as to any expert witnesses plaintiffs intended to use at trial. Letters from defendants requesting that plaintiffs supplement discovery concerning expert witnesses were mailed 28 April and 6 November 1998. On 2 February 1999, plaintiffs filed a supplemental interrogatory response identifying Dr. Wilson as an expert witness and stating his anticipated testimony might include

> matters relative to the Rottweiler breed of dog, and the general nature, characteristics and care of the Rottweiler breed as well as give particular characteristics and matters concerning the Rottweiler. He may give opinions relative to the Rottweiler owned by the Defendants which will be based upon the knowledge of the breed.

On 10 February and 15 April 1999, defendants directed two letters to plaintiffs pointing out that the supplemental response had addressed only the subject matter of the expert's testimony. Defendants requested that a statement of Dr. Wilson's opinions be provided. Plaintiffs thereupon filed a second supplemental response stating Dr. Wilson would be "called upon to testify about and give opinions relative to matters of the Rottweiler breed of dog," that he "may be called upon to render opinions concerning the proper care of a Rottweiler," and that "he may give opinions relative to the Rottweiler owned by the Defendants[.]" On 4 May 1999, defendants again wrote requesting that plaintiffs supply the substance of opinions expected to be given by Dr. Wilson, but did not thereafter seek to depose Dr. Wilson.

On the morning of trial, 1 June 1999, defendants filed their motions. The trial court denied the motions, but ordered Dr. Wilson to be made available to defendants by telephone that day. Defendants' counsel spoke with Dr. Wilson by telephone during a recess prior to jury selection.

On appeal, defendants maintain the trial court's grant of telephone access to Dr. Wilson was inadequate and that sanctions constituted the only appropriate remedy for plaintiffs' unseasonable failure to supplement responses to plaintiffs' interrogatories.

N.C.G.S. § 1A-1, Rule 26(e)(1) (1999) provides:

A party is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

It is well established that the purpose and intent of Rule 26(e)(1) is to prevent a party who has discoverable information from making evasive, incomplete, or untimely responses to requests for discovery. *See Willoughby v. Wilkins*, 65 N.C. App. 626, 641, 310 S.E.2d 90, 99-100 (1983), *disc. review denied*, 310 N.C. 631, 315 S.E.2d 697 and 310 N.C. 631, 315 S.E.2d 698 (1984). Imposition of sanctions pursuant to N.C.G.S. § 1A-1, Rule 37(d) (1999) for failure to comply with Rule 26 (e) is within the sound discretion of the trial court. *Imports Inc. v. Credit Union*, 37 N.C. App. 121, 124, 245 S.E.2d 798, 800 (1978).

In *Willoughby*, the plaintiff learned of a new expert defense witness ten days before trial, was able to depose the witness only one day prior to the peremptorily set trial date, and did not obtain a copy of the deposition transcript because of illness in the court reporter's family. *Willoughby*, 65 N.C. App. at 642, 310 S.E.2d at 100. On at least three occasions in the two years preceding trial, the most recent but three weeks before the peremptorily set date and in response to plaintiff's motion to compel discovery, the defendants "asserted that no determination had been made as to the experts they would present at trial." *Id.* at 639, 310 S.E.2d at 98. This Court reversed the trial court's denial of the plaintiff's motion to compel discovery, stating

where a case has been set for trial peremptorily . . . , the court may not properly refuse to intervene to compel discovery on a material feature of the case, such as the identity of expert witnesses . . . .

*Id.* at 643, 310 S.E.2d at 101. We emphasized that our ruling was directed at the trial court's failure to compel discovery as opposed to the discretionary motion for sanctions under Rule 37. *Id.*

Unlike the circumstance in *Willoughby*, however, defendants' pre-trial motions herein did not seek to compel discovery, but rather to impose the sanction of prohibiting the testimony of Dr. Wilson. We note parenthetically that, although requesting the imposition of a Rule 37 sanction, *see* G.S. § 1A-1, Rule 37 (b)(2)b. (permissible sanctions under Rule 37 include prohibiting a party "from introducing designated matters in evidence"), defendants' pre-trial motions failed to reference a designated Rule of Civil Procedure notwithstanding the strictures of Rule 6 of the North Carolina General Rules of Practice for the Superior and District Courts ("[a]*ll* motions . . . shall state the rule number or numbers under which the movant is proceeding" (emphasis added)).

In addition, Dr. Wilson was not a *new* expert witness. Defendants learned of Dr. Wilson as plaintiffs' potential expert witness four months prior to trial and were aware of plaintiffs' intention that Dr. Wilson render opinions about the Rottweiler breed two months before trial. Moreover, notwithstanding the deficiency in plaintiffs' supplemental response, defendants declined to depose Dr. Wilson and elected to wait until the week of trial to file their pre-trial motions. Finally, before the jury was selected, the trial court afforded defendants an opportunity to "depose" Dr. Wilson. Notwithstanding plaintiffs' failure to provide to defendants the substance of Dr. Wilson's anticipated testimony, *see* G.S. § 1A-1, Rule 26(e)(1), we cannot say under these circumstances that the trial court abused its discretion by denying defendants' pre-trial motions. *See Imports Inc. v. Credit Union*, 37 N.C. App. at 124, 245 S.E.2d at 800.

**[2]** Defendants next argue Dr. Wilson's opinion testimony regarding the Rottweiler breed was inadmissible based upon his acknowledged lack of expertise in the area. Defendants' contention is unfounded.

Opinion testimony by an expert witness is ordinarily admissible if there is evidence that the witness,

> through study or experience, or both . . . , has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject matter of his testimony.

*Maloney v. Hospital Systems*, 45 N.C. App. 172, 177, 262 S.E.2d 680, 683, *disc. review denied*, 300 N.C. 375, 267 S.E.2d 676 (1980). With respect to qualifying a witness as an expert, this court observed that

'[i]t is not necessary that an expert be experienced with the identical subject area in a particular case or that the expert be a specialist, licensed, or even engaged in a specific profession.'

*Robinson v. Seaboard System R.R., Inc.*, 87 N.C. App. 512, 517-18, 361 S.E.2d 909, 913 (1987) (quoting *State v. Ballard*, 312 N.C. 129, 140, 322 S.E.2d 370, 376 (1984)), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988). Finally,

[a] finding by the trial judge that the witness qualifies as an expert is exclusively within the discretion of the trial judge and is not to be reversed on appeal absent a complete lack of evidence to support his ruling.

*Conner v. Continental Indus. Chemicals, Inc.*, 123 N.C. App. 70, 77, 472 S.E.2d 176, 181 (1996).

In the case *sub judice*, Dr. Wilson testified he had attended N.C. State University and veterinary school at the University of Georgia. While a student at the University of Georgia, Dr. Wilson studied the characteristics and behavioral traits of various dog breeds. Finally, he related he was a small animal practicing veterinarian who had cared for approximately five hundred Rottweiler dogs since the early eighties.

We hold the trial court did not abuse its discretion in determining that Dr. Wilson, by virtue of his education, training, experience, and twenty-year practice as a veterinarian, was better qualified than the average juror to have an opinion upon the characteristics of Rottweiler breed. *See Maloney*, 45 N.C. App. at 177, 262 S.E.2d at 683-84. Finding no abuse of discretion in the qualification of Dr. Wilson as an expert, we further conclude that the trial court did not err in allowing Dr. Wilson to relate his experience with Rottweiler dogs and the manner in which he customarily dealt with them in his practice, and also to express an opinion concerning the general behavior of the breed. That Dr. Wilson was not specifically an expert on Rottweilers did not render his opinion testimony inadmissible. *See id.*

[3] Lastly, defendants maintain the trial court erred by denying their motions at trial for directed verdict and for judgment notwithstanding the verdict (JNOV) (defendants' trial motions). We do not agree.

In ruling on a motion for directed verdict or for judgment notwithstanding the verdict made by a defendant pursuant to G.S.

sec. 1A-1, Rule 50, the court must consider the evidence in the light most favorable to the plaintiff and resolve all conflicts in his favor. The plaintiff must receive the benefit of every inference which may reasonably be drawn in his favor. The granting of either motion is appropriate only if the evidence is insufficient, as a matter of law, to support a verdict for the plaintiff.

*Hicks v. Food Lion, Inc.*, 94 N.C. App. 85, 88, 379 S.E.2d 677, 679 (1989) (citations omitted).

Defendants first assert there was insufficient evidence as a matter of law to establish a prima facie case of negligence against defendants. Defendants are mistaken.

Initially, we note this Court has observed that "not all actions seeking recovery for damage caused by a domestic animal need involve the vicious propensity rule," *Griner v. Smith*, 43 N.C. App. 400, 407, 259 S.E.2d 383, 388 (1979), generally described as a strict liability type of determination relying upon "proof of vicious propensity and knowledge by the owner." *Id.* at 406, 259 S.E.2d at 387. Further, we have explained that in circumstances other than those concerning vicious propensity,

> [t]he owner of a domestic animal is chargeable with knowledge of the general propensities of certain animals and he must exercise due care to prevent injury from reasonably anticipated conduct.

*Id.* at 407, 259 S.E.2d 383, 388.

In *Williams v. Tysinger*, 328 N.C. 55, 399 S.E.2d 108 (1991), moreover, our Supreme Court discussed a mother's claim to recover medical expenses after her minor child was kicked in the head by a horse. *Id.* at 56, 399 S.E.2d at 109. The gravamen of the mother's negligence action against the owner of the horse was identified as

> not the wrongful keeping of a vicious animal; rather . . . the encouraging two young children to play with a horse after being warned by the children's mother that they had no familiarity with horses or any other large animals.

*Id.* at 60, 399 S.E.2d at 111. Accordingly, the issue of the owner's negligence therein was not dependent upon the owner's knowledge of any vicious or dangerous propensities of the horse. Nonetheless, the Court held the owner was chargeable on a claim of negligence with knowledge of the *general* propensities of the horse, including "the

fact that the horse might kick without warning or might inadvertently step on a person." *Id.*

Although no case in this jurisdiction has invoked the *Williams* rule where the domestic animal was a dog, we conclude that application of the rule is appropriate on the facts herein. The negligence of defendants as owners of Rowdy was not premised upon their knowledge of the dog's vicious propensities; that claim was dismissed by the trial court and plaintiffs have not cross-appealed. Rather, for purposes of plaintiffs' negligence claim, defendants, "as owners of [Rowdy], [we]re 'chargeable with the knowledge of the general propensities,' " *id.* at 60, 399 S.E.2d at 111 (quoting *Griner*, 43 N.C. App. 400, 407, 259 S.E.2d 383, 388), of the Rottweiler animal.

Plaintiffs' expert Dr. Wilson related that the Rottweiler breed was brought to the United States in the mid-1980's for use as a guard dog or dog of personal protection. He described the Rottweiler breed as very strong, aggressive and temperamental, suspicious of strangers, protective of its space, and unpredictable. Dr. Wilson further testified that he took great care while examining mature Rottweiler dogs in his practice because they were believed to be dogs that might bite.

Defendants offered no evidence, through an expert witness or otherwise, to refute the testimony of Dr. Wilson regarding the general propensities and behavior traits of the Rottweiler breed. Under the *Williams* rule, therefore, defendants were chargeable in a negligence action with knowledge of the general propensities of a Rottweiler dog as reflected in plaintiffs' evidence, including that a Rottweiler might attack or bite a stranger located in its territory. *See id.* In short, the question of defendants' negligence in failing to restrain Rowdy in light of their knowledge of the Rottweiler animal's general propensities was an issue for the jury and the trial court did not err in denying defendants' trial motions in that regard.

[4] Alternatively, defendants' argue Richard was guilty of contributory negligence as a matter of law in failing to request defendants to confine or restrain Rowdy while Richard was working at their home, and also in agreeing to assist Robin in repairing the texturizing machine outside the house although aware Rowdy was running loose on defendants' property. We disagree.

It is well established that

"[e]very person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he

fails to exercise such care . . . he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury."

*Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980) (quoting *Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965) (citations omitted).

In addition, when the trial court considers a defendant's motion for a directed verdict on the grounds that the evidence establishes plaintiff's contributory negligence as a matter of law, the issue is whether

"the evidence taken in the light most favorable to plaintiff establishes h[is] negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. Contradictions or discrepancies in the evidence even when arising from plaintiff's evidence must be resolved by the jury rather than the trial judge."

*Rappaport v. Days Inn, Inc.*, 296 N.C. 382, 384, 250 S.E.2d 245, 247 (1979) (quoting *Clark v. Bodycombe*, 289 N.C. 246, 251, 221 S.E.2d 506, 510 (1976)). Consequently, the issue of contributory negligence is ordinarily a question for the jury rather than an issue decided as a matter of law. *Champs Convenience Stores v. United Chemical Co.*, 329 N.C. 446, 456, 406 S.E.2d 856, 862 (1991).

Under the foregoing authorities, therefore, the

question here is whether the evidence taken in the light most favorable to [] plaintiff[s] allows no reasonable inference except [Richard's] negligence: that a reasonably prudent and careful person exercising due care for his or her safety,

*Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 469, 279 S.E.2d 559, 563 (1981), would have requested defendants to restrain Rowdy while that person was on defendants' premises or would have refused to work in an area where the animal was at large.

In the case *sub judice*, the evidence viewed in the light most favorable to plaintiffs indicated Richard was working inside the defendants' home when asked by Robin, co-owner of Drywall and Richard's employer, to assist in the repair of a texturizing machine located outside the house. Although he had seen Rowdy in the area

earlier and "did not trust" the dog, Richard accompanied Robin to the lakefront area of the premises where Rowdy was lying down in grass near the water. While Richard helped Robin work on the machine, Rowdy jumped on Richard, biting off his ear. Richard in no way provoked Rowdy nor attempted to touch or approach the dog in any way. Defendant Stephen Williams testified he had told tradespersons Rowdy was tame and would not bite and Loy testified he had been told Rowdy was playful and did not bite.

Defendants' contention to the contrary, we cannot hold the foregoing to constitute contributory negligence as a matter of law. While arguably adequate to sustain submission of the issue of Richard's contributory negligence to the jury, the evidence failed to exclude every reasonable inference save that of Richard's failure to exercise the same care for his safety as a reasonably careful and prudent person under the same or similar circumstances would have exercised. *See id.* Differing inferences arising from contradictions in the evidence are for resolution by the jury. *See Rappaport*, 296 N.C. at 384, 250 S.E.2d at 247. Accordingly, to the extent defendants' trial motions relied upon Richard's alleged contributory negligence as a matter of law, such motions were properly denied by the trial court.

No error.

Judges WYNN and McGEE concur.