DOROTHY HARRIS, Plaintiff v. CLARENCE BAREFOOT, LUCIA CASTALDO, and RICHARD CLYDE, jointly and severally, Defendants

No. COA09-1313

(Filed 3 August 2010)

**Animals— dog attacks—knowledge of vicious propensities —summary judgment**

The trial court did not err by granting summary judgment in favor of defendants in a negligence case arising out of an attack by two dogs on plaintiff postal worker. Plaintiff failed to show defendant dog owners knew or should have known of the vicious propensities of their dogs.

Appeal by plaintiff from judgments entered 22 June 2009 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 11 March 2010.

*Washington & Pitts, P.L.L.C., by Marshall B. Pitts, Jr., for plaintiff.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Thomas M. Buckley and Suzanne R. Walker, for defendant Castaldo.*

---

**HARRIS v. BAREFOOT**

[206 N.C. App. 308 (2010)]

*Pope & Tart, by P. Tilghman Pope, for defendant Barefoot.*

ELMORE, Judge.

On 5 July 2005, Dorothy Harris (plaintiff) was delivering mail for the United States Postal Service at 3362 Meadowlark Road in Harnett County when she was attacked by two dogs.

Per her deposition, plaintiff relates the events of the incident as follows: plaintiff had delivered a package to 3362 Meadowlark Road, which was located directly across the street from the home of Clarence Barefoot (defendant Barefoot). She then walked back up the driveway toward the road and saw two dogs barking at her from across the street near the Barefoot home. Within a matter of seconds, she was surrounded by the two dogs, knocked to the ground, and bitten repeatedly. Plaintiff later described the dogs as a Rottweiler named Riley, belonging to defendant Barefoot, and an Australian Heeler/Border Collie mix dog named Dusty, belonging to Lucia Castaldo (defendant Castaldo). Defendant Castaldo and Dusty were visiting defendant Barefoot, defendant Castaldo's grandfather, when the attack allegedly occurred. As a result of the attack, plaintiff sustained numerous injuries, including more than twenty injuries, including bite marks, lacerations, and skin tears.

In her deposition, defendant Castaldo stated that she was on the back patio of the Barefoot home with Riley and Dusty when she heard barking and screaming from across the street, at which point she and the two dogs jumped up and ran toward the sound. Defendant Castaldo stated that she ran behind the dogs toward the street and that the dogs were out of her sight for a few seconds as they rounded to corner of the Barefoot home. When she arrived across the street near 3362 Meadowlark Road, she found plaintiff, who seemed to have suffered dog bites. Defendant Castaldo then performed first aid and took plaintiff to the hospital.

Plaintiff brought suit against defendants, alleging negligence.[1] Both defendants filed motions for summary judgment, and the trial court granted those motions on 23 June 2009 and 30 June 2009. Plaintiff now appeals.

Plaintiff argues that the trial court erred in granting summary judgment because there existed genuine issues of material fact as to

---

1. Plaintiff also brought suit against Richard Clyde, who resides at 3362 Meadowlark Road, but voluntarily dismissed those claims on 25 March 2009; he is not involved in the appeal at hand.

whether defendants knew or should have known of the vicious propensities of their dogs. Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009). "Where the pleadings and proof disclose that no cause of action exists, summary judgment is properly granted." *Joslyn v. Blanchard*, 149 N.C. App. 625, 628, 561 S.E.2d 534, 536 (2002) (citation omitted). In evaluating a trial court's grant of summary judgment, "[e]vidence presented by the parties is viewed in the light most favorable to the non-movant." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003) (citation omitted).

For a plaintiff's negligence action to survive a defendant's motion for summary judgment,

> a plaintiff must set forth a prima facie case (1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances.

*Strickland v. Doe*, 156 N.C. App. 292, 294, 577 S.E.2d 124, 128 (2003) (quotations and citation omitted). In this case, plaintiff must set forth that the dogs possessed a vicious propensity and that defendants knew or should have known of this propensity. *Swain v. Tillett*, 269 N.C. 46, 51, 152 S.E.2d 297, 301 (1967). "If the plaintiff establishes that an animal is in fact vicious, the plaintiff must then demonstrate that the owner knew or should have known of the animal's dangerous propensities." *Ray v. Young*, 154 N.C. App. 492, 494, 572 S.E.2d 216, 219 (2002). The test of liability of the owner does not contemplate the intentions of the animal but whether the owner should know from past conduct that the animal is likely, if not restrained, to do an act in which the owner could foresee injury to person or property. *Id.* at 494-95, 572 S.E.2d at 219.

Plaintiff argues that defendant Barefoot knew or should have known that his dog could have posed a danger to others because Rottweilers are aggressive and dangerous by nature, and that defendant Barefoot's treatment of the dog—keeping the dog tethered in his yard most of the time—not only shows that he knew the dog could be violent, but also contributed to the dog's vicious nature. The facts,

**HARRIS v. BAREFOOT**

[206 N.C. App. 308 (2010)]

however, do not support any of these contentions. While our courts have found that Rottweilers are aggressive by nature and that it might be negligent not to keep them restrained, *Hill v. Williams*, 144 N.C. App. 45, 55, 547 S.E.2d 472, 478 (2001), plaintiff has not presented any evidence showing that Riley was indeed a Rottweiler. Plaintiff consistently refers to the dog as a "ninety-pound Rottweiler," but failed to forecast any evidence as to the dog's actual weight or breed. Defendant Barefoot stated that the dog weighed forty-five pounds and was a mixed breed dog, including some Rottweiler ancestry. Even taking the evidence in the light most favorable to plaintiff, as we must, we find no basis to infer the breed of the dog as a Rottweiler. As such, plaintiff's argument related to the dog's breed must fail.

Regarding defendant Barefoot's treatment of Riley, evidence showed that he tethered Riley for 18-20 hours a day to prevent him from running into the street and injuring himself. Plaintiff claims that this shows knowledge that Riley was dangerous and contributed to his vicious nature. In support of this contention, plaintiff relies on an expert and Humane Society literature to show that tethering a dog for this long of a period creates a dangerous environment and does not allow the dog to be properly "socialized," resulting in a dog's being more aggressive than it otherwise would have been. However, this expert never examined Riley, nor did she speak to anyone who had firsthand knowledge of how Riley behaved; her testimony instead was based on general behavior information from other dogs that are tethered for long periods of time. Thus this evidence does not tend to show that Riley possessed a vicious propensity or that defendant Barefoot's treatment contributed to a vicious propensity.

Again, even taking the evidence in the light most favorable to the non-movant, the facts seem to support strongly the conclusions that Riley lacked a vicious nature and that defendant Barefoot had no reason to know of a vicious propensity. One of defendant Barefoot's neighbors stated, in her deposition, that she had never seen Riley at the Barefoot home; the other, her husband, only saw Riley on one occasion. They both stated that they had never heard any barking from Riley and that they had not heard of any situations in which Riley had attacked a person or property. Plaintiff, who delivered mail to the area daily, also stated that she had never seen Riley, had not seen Riley display any vicious behavior toward others, and had not heard of Riley displaying vicious behavior. Defendant Barefoot stated that Riley had not exhibited any vicious propensities toward any other animals or person nor had he been involved in any altercations

with any other animals or persons. This evidence suggests not only that Riley did not have a vicious nature, but also that defendant Barefoot did not have reason to suspect such conduct. Thus, plaintiff has failed to present any evidence showing Riley's vicious propensity or that defendant Barefoot knew or should have known of such a vicious propensity.

Similarly, plaintiff argues that defendant Castaldo knew or should have known that her dog Dusty possessed a vicious propensity because, again, the Australian Heeler/Border Collie mix is an aggressive breed, and her means of restraining the dog shows her knowledge that the dog was dangerous. However, the only evidence presented by plaintiff that the Australian Heeler/Border Collie mix is generally known to have propensities for aggression comes from an article on Wikipedia.com, an online source that can be changed at any time by any user.[2] In contrast to plaintiff's Wikipedia article, Defendant Barefoot presented admissible evidence that Dusty did not have aggressive tendencies. Defendant Barefoot testified that he had not observed Dusty getting into fights with other dogs or any other aggressive tendencies. Defendant Castaldo also testified that Dusty did not show any prior aggressive behavior and had not behaved viciously toward any person or animal. The *Hill* standard that a defendant may have a duty to restrain a dog based upon the general propensities of a particular breed of dog again does not apply, as plaintiff failed to forecast competent evidence that the Australian Heeler/Border Collie mix is a breed generally know to have a vicious propensity. *See Hill*, 144 N.C. App. at 55, 547 S.E.2d at 478.

Plaintiff's argument that defendant Castaldo's means of restraining Dusty shows knowledge of a violent propensity is also without factual support. The evidence on which this claim is based is the testimony of an expert who never personally observed the dog; her tes-

---

2. "Wikipedia.com [is] a website that allows virtually anyone to upload an article into what is essentially a free, online encyclopedia. A review of the Wikipedia website reveals a pervasive and, for our purposes, disturbing series of disclaimers, among them, that: (i) any given Wikipedia article 'may be, at any given moment, in a bad state: for example it could be in the middle of a large edit or it could have been recently vandalized;' (ii) Wikipedia articles are 'also subject to remarkable oversights and omissions;' (iii) 'Wikipedia articles (or series of related articles) are liable to be incomplete in ways that would be less usual in a more tightly controlled reference work;' (iv) '[a]nother problem with a lot of content on Wikipedia is that many contributors do not cite their sources, something that makes it hard for the reader to judge the credibility of what is written;' and (v) 'many articles commence their lives as partisan drafts' and may be 'caught up in a heavily unbalanced viewpoint.' " *Campbell ex. rel. Campbell v. Sec'y of Health and Human Serv.*, 69 Fed. Cl. 775, 781 (2006).

timony was, again, that excessive tethering and poor socialization leads to a dangerous environment for a dog and can make it more dangerous. This does nothing to show a vicious propensity or defendant Castaldo's knowledge of a vicious propensity. Defendant Castaldo testified that she only brought Dusty with her on three visits to her grandparents' home. Plaintiff did not show evidence on how Dusty was kept at defendant Castaldo's primary residence in Atlanta, Georgia. Plaintiff points only to the three occasions in which Dusty was brought to the grandparents' house to substantiate her argument of "excessive tethering."

Plaintiff also claims that defendant Castaldo should have known from Dusty's habit of chasing horses and trucks that she was aggressive and needed to be restrained. While Dusty may have run behind horses and trucks, there is no evidence that she ever harmed persons or property or was vicious in nature when so doing. Plaintiff presented no evidence that Dusty had vicious propensity or that defendant Castaldo knew or should have known of a vicious propensity. As such, this argument is without merit.

Affirmed.

Judges JACKSON and STROUD concur.