IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-317

Filed:  4 February 2020

Durham County, No. 17 CVS 4406

KIMBERLY MIMS, Plaintiff

v.

DARRELL D. PARKER, SR., LORI WALKER PARKER, Defendants

Appeal by Plaintiff from Order entered 8 August 2018 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court.  Heard in the Court of Appeals 17 October 2019.

*Couch & Associates, PC, by Finesse G. Couch, for plaintiff-appellant.*

*Brown, Crump, Vanore & Tierney, L.L.P., by Andrew A. Vanore, III, for defendants-appellees.*

HAMPSON, Judge.

## Factual and Procedural Background

Kimberly Mims (Plaintiff) appeals from an Order entered 8 August 2018 granting summary judgment for Darrell D. Parker, Sr. and Lori Walker Parker (collectively, Defendants).  The Record reflects the following undisputed, material facts:

On the morning of 10 November 2009, Defendants' daughter and son, ages sixteen and thirteen, respectively, were walking their dog Blue before school on

Summer Storm Drive in Durham, North Carolina. Defendants purchased Blue, an American Bulldog, in 2001 and had moved to Durham in September 2009. Blue was wearing a collar and was restrained on a leash while Defendants' children walked him. Plaintiff was walking along the opposite side of the street that morning after walking her daughter to the bus stop. Blue began barking at Plaintiff and pulling on his leash. Blue broke his collar and ran toward Plaintiff. Defendants' children called after Blue; however, he continued to run to Plaintiff. Blue bit Plaintiff several times on different areas of her body. Plaintiff was transported by ambulance to Durham Regional Medical Center for treatment. There, Plaintiff received a tetanus shot and stitches for her injuries. Plaintiff returned eight days later to have the stitches removed; Plaintiff sought no further medical treatment. After the incident, Blue was quarantined by Durham County Animal Control. Animal Control noted that prior to the 10 November 2009 incident they received no reports concerning Blue's behavior.

On 10 October 2017, Plaintiff initiated this action against Defendants seeking compensatory damages under theories of negligence, strict liability, and infliction of emotional distress. On 18 June 2018, Defendants moved for summary judgment. Defendants alleged that they had never received any complaints about Blue's behavior or noticed him acting aggressively toward any person or animal prior to the 2009 incident.

On 26 June 2018, Plaintiff objected to Defendants' Motion for Summary Judgment and moved the court to enter summary judgment in favor of Plaintiff. Plaintiff's Motion included an affidavit from her expert, Dr. David A. Wilson, Doctor of Veterinary Medicine (Dr. Wilson), averring that "[t]he American Bull Dog is a dangerous breed of dog[.]" Defendants deposed Dr. Wilson, and during his deposition he testified to his opinion of the American Bulldog breed,[1] stating that it "w[as] developed specifically to be aggressive[.]" Dr. Wilson stated it was his opinion that all "pit bulls" are not "dangerous dogs." Dr. Wilson identified that responsible restraint for an American Bulldog would be with a collar and leash. Dr. Wilson indicated his opinions were not specifically about Blue but about "the breed." Plaintiff conceded, in an earlier deposition, she was not aware of any incidents or complaints related to Defendants' dog before or after her incident on 10 November 2009.

On 3 July 2018, Defendants filed an Amended Motion for Summary Judgment, and on 12 July 2018, Plaintiff filed an "Amended Notice of Motion for Summary Judgment" again requesting summary judgment in her favor. On 19 July 2018, Defendants supplemented their response to Plaintiff's interrogatories identifying Dr. Jillian M. Orlando, Doctor of Veterinary Medicine (Dr. Orlando), as their expert witness. Dr. Orlando disagreed with Dr. Wilson's opinion that Blue was a dangerous

---

[1] Dr. Wilson stated that the American Bulldog breed is "another variation of . . . AmStaff, Pit Bull, Bulldog, American Pit Bulldog." Thus, throughout his deposition testimony he uses these different breed names interchangeably.

dog because of his "physical appearance" or "apparent or verified breed."  Dr. Orlando averred "that the temperament of a dog is determined by multiple factors, including, but not limited to, that specific dog's early experience, and socialization."  The trial court heard arguments on the parties' respective Motions for summary judgment, and, on 8 August 2018, the trial court entered an Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment. Plaintiff timely filed Notice of Appeal.

## Issue

The sole issue before this Court is whether the trial court's grant of summary judgment in favor of Defendants on Plaintiff's strict-liability and negligence claims was proper.

## Analysis

### I. Summary Judgment

We review a trial court's summary judgment order de novo.  *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that any party is entitled to a judgment as a matter of law."  N.C. Gen. Stat. § 1A-1, Rule 56(c) (2019) (emphasis added).

*A. Strict Liability*

Plaintiff first contends the trial court erred by granting summary judgment in favor of Defendants on Plaintiff's strict-liability claim. This issue hinges on whether Defendants' dog was a "dangerous dog" under N.C. Gen. Stat. § 67-4.1(a)(1) at the time of the incident. The General Assembly directs that "[t]he owner of a dangerous dog shall be strictly liable in civil damages for any injuries or property damage the dog inflicts upon a person, his property, or another animal." N.C. Gen. Stat. § 67-4.4 (2019). A "dangerous dog" is defined as

> [a] dog that:
>
> 1. Without provocation has killed or inflicted severe injury on a person; or
>
> 2. Is determined by the person or Board designated by the county or municipal authority responsible for animal control to be potentially dangerous because the dog has engaged in one or more of the behaviors listed in subdivision (2) of this subsection."

*Id.* § 67-4.1(a)(1)(a). " 'Severe injury' means any physical injury that results in broken bones or disfiguring lacerations or required cosmetic surgery or hospitalization." *Id.* § 67-4.1(a)(5).

Plaintiff argues "the statute's plain language does not require prior dangerous acts" and asks us to interpret N.C. Gen. Stat. § 67-4.1(a)(1)(a) so that "[i]n those instances where an animal has committed the most damaging of attacks . . . a dog [is] automatically a dangerous dog." As such, Plaintiff contends Blue should have been

classified as a "dangerous dog" under N.C. Gen. Stat. § 67-4.1(a)(1)(a)(1) before the incident with Plaintiff. We disagree.

"If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (citation and quotation marks omitted). Section 67-4.1(a)(1)(a)(1) states that a dangerous dog is one that "[w]ithout provocation *has* killed or inflicted severe injury on a person[.]" N.C. Gen. Stat. § 67-4.1(a)(1)(a)(1) (emphasis added). It is undisputed that prior to the morning of 10 November 2009, Blue had not "killed or inflicted severe injury on a person[.]" *Id.* Accordingly, Blue was not "a dangerous dog" within the meaning of Section 67-4.1(a)(1)(a)(1) on 10 November 2009. The General Assembly hinging strict liability on the dog having been classified a dangerous dog prior to the incident in question is also consistent with our caselaw holding an essential element in dog-bite cases is prior knowledge of the animal's vicious propensity. *See Lee v. Rice*, 154 N.C. App. 471, 474, 572 S.E.2d 219, 222 (2002) ("[T]he gravamen of the cause of action is not negligence, but rather the wrongful keeping of the animal with *knowledge* of its viciousness." (emphasis added) (alterations, citations, and quotation marks omitted)); *see also Swain v. Tillet*, 269 N.C. 46, 51, 152 S.E.2d 297, 301 (1967) ("To recover for injuries inflicted by a domestic animal . . . plaintiff must allege and prove: (1) that the animal was dangerous, vicious, mischievous, or ferocious, or one

termed in law as possessing a vicious propensity; and (2) that the owner or keeper *knew or should have known* of the animal's vicious propensity[.]" (emphasis added) (citation, emphasis, and quotation marks omitted)). Because Blue was not a "dangerous dog" at the time of the 10 November 2009 incident under Section 67-4.1(a)(1), Defendants were not "owners of a dangerous dog" subject to strict liability under Section 67-4.4.[2] Thus, the trial court properly granted summary judgment in favor of Defendants on the strict-liability claim.

*B. Negligence*

Plaintiff next contends the trial court erred in granting summary judgment for Defendants on Plaintiff's negligence claim arising from the dog bite.

> The test to determine defendant's liability in this case has been stated: The test of the liability of the owner of the dog is . . . whether the owner should know from the dog's past conduct that he is likely, if not restrained, to do an act from which a reasonable person, in the position of the owner, could foresee that an injury to the person or property of another would be likely to result. *That is, the liability of the owner depends upon his negligence in failing to confine or restrain the dog.* The size, nature and habits of the dog, known to the owner, are all circumstances to be taken into account in determining whether the owner was negligent.

*Hunnicutt v. Lundberg*, 94 N.C. App. 210, 211-12, 379 S.E.2d 710, 711-12 (1989) (emphasis added) (quotation marks omitted) (citing *Sink v. Moore*, 267 N.C. 344, 350, 148 S.E.2d 265, 270 (1966)). Specifically, Plaintiff contends summary judgment was

---

[2] Plaintiff makes no argument that any other provision of Section 67-4.1(a)(1) defining a "dangerous dog" applies here.

improper because a genuine issue of material fact exists as to whether Defendants

knew Blue was "dangerous" because of his breed. We disagree.

It is undisputed that, on the morning of 10 November 2009, Defendants'

children were walking Blue, who was restrained with a collar and leash. The facts,

taken in the light most favorable to Plaintiff, indicate that there were no prior

incidents that would have put Defendants on notice that Blue required restraints in

excess of a collar and leash. Plaintiff's own expert's testimony reflected:

> [Dr. Wilson]. I believe that certain breeds and types and crosses
> of those breeds are inherently more likely to be dangerous than
> other breeds of dogs and should be consequently trained and
> retrained and restrained in a responsible manner at all times.
>
> [Defendants' Counsel]. How do you restrain them in a responsible
> manner? A leash and a –
>
> [Dr. Wilson]. Collar and a leash.

Accordingly, Plaintiff's own expert testified *even if* Blue was of a breed "inherently

more likely to be dangerous than other breeds[,]" a "collar and leash" is a responsible

manner by which to restrain Blue.[3] What Plaintiff contends is a material, disputed

---

[3] Plaintiff argues this Court's decision in *Hill v. Williams* supports her negligence claim; however, *Hill* is distinguishable from the case at hand. 144 N.C. App. 45, 547 S.E.2d 472 (2001). In *Hill*, the facts established the defendants' Rottweiler was left unrestrained *and* unsupervised on the defendants' property where it attacked the plaintiff as he was working on defendants' property as a contractor. *Id.* at 47, 547 S.E.2d at 474. The same Dr. Wilson as in the case *sub judice* testified to the dangerous propensity of the Rottweiler breed. *Id.* at 48, 547 S.E.2d at 474-75. The trial court denied the defendants' motion for a directed verdict on the plaintiff's negligence claim, and the jury returned a verdict that the plaintiff was injured by the negligence of the defendants. *Id.* at 49, 547 S.E.2d at 475. On appeal, this Court held "the question of defendants' negligence in failing to restrain [their Rottweiler] in light of their knowledge of the Rottweiler animal's general propensities was an issue for

fact—whether Defendants knew Blue was "dangerous" because of his breed—is not material because the undisputed evidence in this case shows Defendants nevertheless restrained Blue in a responsible manner.

"[S]ummary judgment is proper where the evidence fails to establish negligence on the part of defendant[.]" *Gardner v. Gardner*, 334 N.C. 662, 665, 435 S.E.2d 324, 327 (1993) (alterations, citations, and quotation marks omitted). Under the well-established test for liability in this instance—"[t]hat is, the liability of the owner depends upon his negligence in failing to confine or restrain the dog[ ]"—we conclude the trial court correctly granted summary judgment in favor of Defendants. *Hunnicutt*, 94 N.C. App. at 211, 379 S.E.2d at 712 (citation and quotation marks omitted). Here, "the pleadings, depositions, answers to interrogatories, and admissions on file" indicate that Defendants were not negligent in their confinement or restraint of Blue. *See* N.C. Gen. Stat. 1A-1, Rule 56(c). Neither party presented evidence that Blue had previously exhibited aggressive behavior, and Durham County Animal Control noted no prior complaints. Plaintiff's expert testified reasonable restraints for a dog like Blue are a "collar and leash," and both parties acknowledge that on 10 November 2009 Blue was restrained on a collar and leash.

---

the jury and the trial court did not err in denying defendants' trial motions in that regard." *Id.* at 55, 547 S.E.2d at 478. Here, Dr. Wilson testified a collar and leash was a responsible restraint for Blue as an American Bulldog, and it is undisputed Blue was restrained. Accordingly, *Hill* does not support Plaintiff's argument that summary judgment for Defendants on Plaintiff's negligence claim was improper.

No evidence was presented to indicate Blue had previously broken his collar or leash or otherwise establish that such a restraint was no longer reasonable. Thus, the trial court correctly granted summary judgment in favor of Defendants on Plaintiff's negligence claim.

## **Conclusion**

For the foregoing reasons, the trial court's grant of summary judgment for Defendants is affirmed.

AFFIRMED.

Judges ARROWOOD and COLLINS concur.