MAY BELLE NARRON RAPER v. McCRORY-McLELLAN CORPORATION.

(Filed 10 April 1963.)

1. Negligence § 37f—

No inference of negligence arises from the mere fact of a customer's fall on the floor of a store during business hours, nor does the presence of debris, litter or other substances on the floor of the store establish negligence on the part of the proprietor, the doctrine of *res ipsa loquitur* not being applicable.

2. Negligence § 37b—

A store proprietor is not an insurer of the safety of its customers but is only under duty to exercise reasonable and ordinary care to keep that part of its premises maintained for use of its customers in a reasonably safe condition for their use and to give warning of any hidden perils or unsafe conditions insofar as they may be ascertained by reasonable inspection and supervision, the rule of care being constant while the degree of care varies with the exigencies of the occasion.

3. Same—

Where a condition on the premises of a store constituting danger to patrons of the store is created by third parties or an independent agency, the store proprietor cannot be held liable for injury to a patron from such danger unless the condition exists for such a length of time that the proprietor knew or by the exercise of reasonable care should have known of

its existence in time to have removed the dangerous condition or given proper warning of its presence.

**4. Trial § 21—**

On motion to nonsuit, plaintiff must be given the benefit of every fact and every reasonable inference of fact arising upon the evidence, and all conflicts therein must be resolved in his favor.

**5. Negligence §§ 37f, 37g— In this action by customer to recover for fall in store, evidence held for jury on issue of negligence and held not to show contributory negligence as matter of law.**

The evidence tended to show that plaintiff fell when she stepped into vomit on the landing of a well lighted staircase in defendant's store. The evidence favorable to plaintiff was to the effect that employees of the store had been instructed to call the stock boy to get up any substances they saw on the floor of the store and to put a paper over such substances until the stock boy could remove them, that defendant's clerk or supervisor saw a little girl who looked sick, with her head hanging over the stair rail, at the place where the vomit was, and plaintiff testified that when she descended the stairs no one was on the stairway except herself and her two children, who were behind her. *Held:* Whether the vomit had remained on the landing to the knowledge of defendant's clerk or supervisor for a sufficient length of time for her, in the exercise of ordinary care, to have had it removed or to have given proper warning of its presence prior to plaintiff's injury is for the determination of the jury, and the evidence does not show contributory negligence as a matter of law on the part of plaintiff.

**6. Corporations § 26—**

A corporation is liable for the torts of its agents or employees committed by them while acting within the scope of their authority or in the course of their employment.

**7. Negligence § 37b—**

The proprietor of a store will be charged with knowledge of a dangerous condition created by his own negligence or the negligence of his employees acting within the scope of their employment, or a dangerous condition of which the employees have notice, express or implied.

APPEAL by plaintiff from *Carr, J.,* December 1962 Civil Term of WILSON.

Civil action to recover damages for personal injuries sustained in a fall on the landing of the stairway to the basement of defendant's store.

Defendant in its answer denied negligence, and conditionally pleaded contributory negligence as a bar to recovery.

From a judgment of involuntary nonsuit entered at the close of plaintiff's evidence, she appeals.

*Narron, Holdford & Holdford by Talmadge L. Narron for plaintiff appellant.*

*Gardner, Connor & Lee by Raymond M. Taylor for defendant appellee.*

PARKER, J.   Plaintiff's evidence is as follows:

Defendant operates a variety store in the town of Wilson, North Carolina. Customers are invited to shop on the ground floor and on the basement floor. The two floors are connected by a stairway. Fifteen or twenty steps down this stairway from the ground floor there is a small landing, and there are two or three steps from the landing to the basement floor. There is a double handrail down the center of the stairway and a handrail next to the wall on the left "as you go down." The steps of the stairway were covered with rubber treads of nonskid type, "dark reddish" or yellow in color.

"Close to night" on Christmas Eve 1960 plaintiff went into defendant's store to shop. She did some shopping on the ground floor and decided to go downstairs to the basement floor. The stairway was lighted with a very bright fluorescent light from the ceiling: it was lighter on the stairway than it would be in the daytime on a clear day. She started down the left aisle of the stairway, and had a handrail on her right and one on her left. She was using both of them. Her two small children were following her. No other person was on the stairway at the time.

Plaintiff testified: "I went down the steps and got to the landing. And when I started to step off I stepped in something, slimy mess and slipped down.* * *There was no one standing on the landing. There was no covering over the slimy substance that I referred to. There was no barricade around the slimy substance.* * *When I slipped on the landing I had taken one step off the bottom step.* * *I did not see any little colored girl or colored lady about the landing as I came down the steps. I did not meet any small colored child or colored lady as I came down the steps."

Plaintiff got up, walked down the steps to the basement floor, and took a seat in the shoe department, a few feet from the stairway. Mrs. Mary Jane Deans works in the shoe department. Plaintiff testified, without objection, that Mrs. Deans "got the alcohol and rubbed my ankle with it and told me she saw a little girl sitting down there sick and vomited on the floor, and a lady, her mother, took and carried her upstairs."

Plaintiff did not see what she stepped in before she slipped down in it. After slipping down she looked at it. The "puddle" was about six

inches across. Plaintiff testified on cross-examination: "Just before I got to the bottom step, I looked at the floor but I didn't see the slimy mess on the floor when I stepped down. The puddle was right near the step, about a foot from the step and about eighteen inches from the wall."

Plaintiff, after her fall, bought a set of curtains in the basement, went upstairs, and returned home. She sustained a broken bone in her ankle as a result of her fall.

Plaintiff offered in evidence the adverse examination by her of Mrs. Mary Jane Deans, who was employed by defendant as saleslady and floor supervisor of the basement floor department of its store. The substance of her testimony, as far as relevant on this appeal, is as follows:

Her duties were to see that customers were waited on, to help customers herself, and to supervise the clerks at the twelve or more counters in the basement. The employees were instructed as a part of their responsibilities that if they saw anything on the floor to call the stock boy to get it up, and to put paper over it until he could get it up. During the Christmas Season there was a clerk at each counter, and she was working the cash register. The cash register was on the counter nearest the steps. When she was at the cash register, she was about six feet from the stairway and facing it. The landing plaintiff fell on is about three steps up from the basement floor. She saw plaintiff fall on the landing. At the time some other people were on the stairway going up, and some coming down.

She did not see anything on the tile of the landing until plaintiff fell. After plaintiff fell, she looked at a substance on the landing, and it looked like vomit; it was a slimy, watery substance. She then notified the stock boy to get it up. She had not notified him earlier, because she did not know it was there.

Mrs. Deans testified on her adverse examination: "I saw a little girl with her head hanging over the stair rail at the landing. That's the place where the vomit was.* * *The little girl and her mother were going up the steps. That's the last I saw. She acted like she was sick. I thought she was sick. Yes, I thought she was sick. She was standing there just a few seconds.* * *I did not see anything falling out of her mouth* * *. When the little colored girl went up the steps was when I was going over to help Mrs. Raper up. No, I had not seen her before I saw Mrs. Raper. I saw them both about the same time.* * *The little colored girl hadn't gone up the steps before Mrs. Raper came down the steps.* * *It all happened all of a sudden. Nobody even had time. Nobody had said one word to me about the child being sick on the

steps.* * *When I saw the vomit I called for him [the stock boy] to get it up.* * *I know that vomit on the landing of that stairway, on that tile of the stairway would make it extremely slippery. And would be dangerous to the customers coming up and down the steps."

No inference of negligence on the part of the defendant arises merely from a showing that plaintiff, a customer in defendant's store during business hours, sustained an injury in the store. *Skipper v. Cheatham*, 249 N.C. 706, 107 S.E. 2d 625; Annotation 61 A.L.R. 2d, page 56.

It seems to be universally held that the *res ipsa loquitur* doctrine is inapplicable in suits against business proprietors to recover for injuries sustained by customers or invitees in falls on floors and passageways located within the business premises and on which there is present litter or debris or other substances. *Powell v. Deifells, Inc.*, 251 N.C. 596, 112 S.E. 2d 56; *Copeland v. Phthisic*, 245 N.C. 580, 96 S.E. 2d 697, 63 A.L.R. 2d 587; *Fox v. Tea Co.*, 209 N.C. 115, 182 S.E. 662; Annotation 61 A.L.R. 2d, page 59.

That defendant is not under an insurer's liability as to the safety of customers who come upon its premises during business hours is a principle of the law of negligence so familiar and so firmly established as almost to ' obviate the necessity of citing supporting authority. *Waters v. Harris*, 250 N.C. 701, 110 S.E. 2d 283; *Copeland v. Phthisic, supra*; Annotation 61 A.L.R. 2d, page 14.

Equally familiar and firmly established in the law of negligence is the rule that the criterion against which is to be measured the conduct of the defendant on whose premises plaintiff, a customer during business hours, sustained an injury is that of ordinary or reasonable care. It was the duty of the defendant to use ordinary care to keep in a reasonably safe condition those portions of its premises which it may expect will be used by its customers during business hours, and to give warning of hidden perils or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision. *Waters v. Harris, supra; Lee v. Green & Co.*, 236 N.C. 83, 72 S.E. 2d 33; *Ross v. Drug Store*, 225 N.C. 226, 34 S.E. 2d 64; *Watkins v. Furnishing Co.*, 224 N.C. 674, 31 S.E. 2d 917; *Griggs v. Sears, Roebuck & Co.*, 218 N.C. 166, 10 S.E. 2d 623.

"But when an unsafe condition is created by third parties or an independent agency it must be shown that it had existed for such a length of time that defendant knew or by the exercise of reasonable care should have known of its existence, in time to have removed the danger or given proper warning of its presence." *Powell v. Deifells, Inc., supra*.

The standard is always the conduct of the reasonably prudent man. The rule is constant, while the degree of care which a reasonably prudent man exercises, or should exercise, varies with the exigencies of the occasion. *Bemont v. Isenhour*, 249 N.C. 106, 105 S.E. 2d 431; *Diamond v. Service Stores*, 211 N.C. 632, 191 S.E. 358. For instance, what would constitute such care in a country non-service store would seem not to be adequate in a city self-service store through which passes a steady flow of customers who, because of the nature of the business, are constantly handling the merchandise.

It is hornbook law that in considering a motion for judgment of involuntary nonsuit plaintiff must be given the benefit of every fact and of every reasonable inference of fact arising from the evidence, and all conflicts therein must be resolved in his favor. *Smith v. Rawlins*, 253 N.C. 67, 116 S.E. 2d 184; *Bundy v. Powell*, 229 N.C. 707, 51 S.E. 2d 307.

Plaintiff's evidence considered according to the rule shows: Plaintiff, a customer in defendant's store during business hours, late on Christmas Eve 1960, was going down the well-lighted stairway with handrails leading from the ground floor of the store to its basement floor. No one was on the stairway at the time except herself and her two small children, who were behind her. She descended fifteen or twenty steps, stepped on the small landing into a puddle of vomit, and fell. The small landing was two or three steps above the basement floor. The vomit on the tile of the stairway made it extremely slippery, dangerous to customers coming down the steps, and constituted a hidden peril or unsafe condition known to defendant and not to plaintff. Mrs. Mary Jane Deans, supervisor of the basement floor department of the store, was working at the cash register about six feet from the landing of the stairway and facing it. Shortly after plaintiff fell, Mrs. Deans told her "she saw a little girl sitting down there sick and vomited on the floor, and a lady, her mother, took and carried her upstairs." Plaintiff did not see any little girl or lady about or on the landing as she came down the steps. Mrs. Deans testified on adverse examination: "I saw a little girl with her head hanging over the stair rail at the landing. That's the place where the vomit was.* * *She looked like she was sick." The employees of the store were instructed as a part of their responsibilities that if they saw anything on the floor to call the stock boy to get it up, and to put paper over it until he could get it up. The vomit had no paper or anything over it or near it to indicate its presence.

Considering the size of the store, the nature of its business, the location of the vomit on the landing of the stairway from the ground

floor to the basement floor which made the landing extremely slippery, the number of customers using the stairway on Christmas Eve, the foresight which a person of ordinary care and prudence would be expected to use under the circumstances and the reasonably foreseeable consequences of injuries to customers by reason of the dangerous condition on the landing of the stairway, and that the vomit had existed on the landing for a sufficient length of time after the supervisor of the basement floor knew it was there for the little girl and her mother to go up the fifteen or twenty steps from the landing to the ground floor and be away from the stairway when plaintiff began coming down, and that Mrs. Deans, the supervisor of the basement floor, was charged by defendant as a part of her responsibility that if she saw anything on the floor to call the stock boy to get it up and to put paper over it until he could get it up, it is our opinion that it should be left to a jury to determine whether the vomit remained on the landing of the stairway to the knowledge of the defendant's supervisor, Mrs. Deans, for a sufficient length of time for her in the exercise of ordinary care to have removed it, or to have had it removed, or to have given proper warning of its presence to plaintiff before she stepped in it and fell.

It is elementary knowledge that a corporation in its relations to the public is represented and can act only by and through its duly authorized officers and agents. 19 C.J.S., Corporations, sec. 999. The general rule is well established that a corporation is liable for the torts and wrongful acts or omissions of its agents or employees acting within the scope of their authority or the course of their employment. *Dickerson v. Refining Co.*, 201 N.C. 90, 159 S.E. 446; *Hussey v. R.R.*, 98 N.C. 34, 3 S.E. 923, 2 Am. St. Rep. 312; 13 Am. Jur., Corporations, page 1043.

It is said in 65 C.J.S., Negligence, sec. 51, Knowledge of Defect or Danger, page 548: "The inviter will be charged with knowledge of a dangerous condition created by his own negligence or the negligence of his employee acting within the scope of his employment, or of a dangerous condition of which his employee has notice."

*Pfeifers of Arkansas v. Rorex*, 225 Ark. 840, 286 S.W. 2d 1, 62 A.L.R. 2d 1, is quite similar. The appellee, Mrs. Albert Rorex, a customer in appellant's store stepped on an unidentified slippery substance in the aisle of the store, and fell. About thirty seconds after the accident another customer in the store heard an employee of appellant say the substance should have been removed from the floor before somebody slipped and fell. Several witnesses for appellant testified that shortly before Mrs. Rorex fell another customer had dropped a package on

the floor of the aisle. When the package struck the floor, its contents broke and an unidentified liquid substance seeped through the brown paper sack onto appellant's floor. Most of these witnesses testified that only a short interval elapsed between the time the liquid seeped onto the floor and the time the appellee slipped on the substance and fell. One of appellant's employees heard the bottle break, and immediately proceeded to notify the department manager of the incident so that a porter could be sent to clean up the floor. The Court upheld a verdict and judgment for Mrs. Rorex.

For full discussions, annotations, and citations of cases legally comparable, see 61 A.L.R. 2d 26-27; *ibid,* 182-184; 62 A.L.R. 2d 28-33; *ibid,* 138-144. See also 65 C.J.S., Negligence, sec. 51.

It is our opinion, and we so hold, plaintiff has not proved herself out of court so as to warrant a nonsuit on the ground of contributory negligence. *Lincoln v. R.R.,* 207 N.C. 787, 178 S.E. 601.

Plaintiff's evidence makes out a case for the twelve. The judgment of involuntary nonsuit is

Reversed.