VONNIE MAE GRADY v. J. C. PENNEY COMPANY.

(Filed 19 December 1963.)

**1. Negligence § 37b—**

 The proprietor of a store owes his customers the duty to exercise ordinary care to keep the premises in reasonably safe condition and to give warning of hidden perils and unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision.

**2. Negligence § 37g—**

 Evidence tending to show that plaintiff customer, after having been directed to a dressing room, opened the curtain to an adjacent stair landing,

took two steps and lost her balance and fell down the stairs, without evidence of defective lighting or any inherent danger in the plan of construction, with testimony by plaintiff herself that there was nothing to prevent her from seeing the steps if she had looked, *is held* to warrant judgment as of nonsuit.

APPEAL by plaintiff from *Clark, S.J.*, August 1963 "A" Civil Session of LENOIR.

*Lamar Jones for plaintiff appellant.*
*White & Aycock for defendant appellee.*

MOORE, J. Plaintiff seeks to recover damages for personal injuries suffered by her when she fell down a flight of stairs in defendant's department store. She appeals from judgment of involuntary nonsuit. Defendant offered no evidence.

The fall occurred about 4:45 P.M., 24 January 1961. Plaintiff was shopping at defendant's store. She went to the dress department on the second floor and selected two house dresses, then proceeded to the dressing room area at the direction of a saleslady who told her that she (the saleslady) would join her in a few minutes. Plaintiff pushed aside a curtain to what she thought was the entrance to a dressing room. In fact it was an entrance to a landing at the head of a stairway. She stepped inside, lost her balance and fell down a flight of twelve steps.

Plaintiff offered in evidence a "Partial second floor plan" of defendant's store. It was stipulated that the drawing is a true and accurate representation of the portion of the store involved. A short aisle leads from the dress department eastwardly between the clerks' desk and the mirror compartment to a sort of alcove or hallway on which the dressing rooms or booths are located. The hallway runs north and south, at right angles to the above-mentioned aisle. The hallway dead-ends at the south wall of the store building. At the south end of the hallway on the west side is a dressing room, and from this dressing room northward to the aisle is a partition wall which separates a part of the dress department from the hallway. On the east side of the hallway are five dressing rooms or booths which open into the hallway and are situate between the hallway and the east wall of the store building. These dressing rooms are about 4 feet by 4½ feet, floor dimensions; the entrances to these rooms are openings about 22 inches wide, covered with curtains hung by eyelets on a rod. Immediately to the north of this row of dressing rooms is the entrance to the stair landing; this opening is a little wider than the dressing room entrances,

GRADY *v.* PENNEY CO.

and has a curtain in all respects similar to those at the dressing room entrances; this entrance is set back about a foot farther east than the fronts to the dressing rooms. Extending north from the stair-landing entrance is a partition wall encasing the stairwell. The stairway is about 3 feet wide and has a guard or handrail along the west side; the stairway is not maintained for the use of customers; it leads to the office on the mezzanine between the first and second floors. The landing at the head of the stair is approximately 2½ feet by 3 feet. The entrance to the landing is 25 inches wide, and the landing extends 3 to 4 inches farther to the north than the entrance itself. In proceeding eastwardly along the aisle toward the dressing-room hallway, the entrance to the stairway is nearly in line with the aisle, just a little to the south. To reach the dressing rooms, one must turn right, almost at right angles, from the aisle into the hallway.

The following is a summary of plaintiff's version of the accident: A saleslady at the clerks' desk told plaintiff to pick out what house dresses she wanted. Plaintiff selected two and told the saleslady she would like to try them on. The saleslady told plaintiff to go back to the hall "and turn to the right and she (the saleslady) would be there in a little while." Plaintiff proceeded to go back to the dressing-room hallway, saw Mrs. Hawkins, a seamstress, to the left of the stairway entrance, and spoke to her, and went to the first entrance she saw, which was the stairway entrance — plaintiff thought it was a dressing room. She pulled the curtain aside, "peeled it open," with her right hand while holding the dresses in her left hand. She stepped through the opening, but does not recall with which foot. When she stepped in she got off balance and fell down the stair. She had not seen the stairsteps before she stepped in and became overbalanced. She stepped in as she pulled the curtain back. She had shopped at Penney's a number of years. She had been on the second floor and tried on dresses a number of times, but on those occasions there was someone with her. Her eyesight is normal and she "could walk perfectly all right" up to the time of the accident. On cross-examination she testified: "I reckon I couldn't have gotten by that post and stepped down in that hole . . . without taking another step after I got inside. . . . I reckon there wasn't anything to prevent me from seeing the steps if I had looked. There wasn't anything on the floor to cause me to fall. I did not slip on anything."

The proprietor of a store owes his customers the duty to exercise ordinary care to keep the premises in reasonably safe condition and to give warning of hidden perils and unsafe conditions insofar as can be ascertained by reasonable inspection and supervision. *Case v. Cato's, Inc.*, 252 N.C. 224, 113 S.E. 2d 320.

Plaintiff alleges that defendant was negligent in that: (1) The stairway and landing were without proper lighting; (2) there was no guard rail at the landing or on the stair; (3) the stairwell was "constructed peculiarly and inherently unsafe to persons on or about the premises"; (4) there was no warning sign that the entrance in question was to a stairway; and (5) the saleslady directed plaintiff to the dressing-room area without warning her of the stairway.

The evidence does not support plaintiff's allegation that the stairway and landing were without proper lighting. A witness, who was not in the store at the time of the occurrence and who had seen the lighting on a prior occasion, testified: "It was lighted fair. The light inside the stairway was not equal with that in the sales section of the store." Eight flourescent light tubes, attached to the ceiling about 4 feet north of the position of the landing, extended over the stairway about one-third the width of the stairway; the other ends of the tubes extended into the dressing-room hallway. There is a window in the outside wall of the building at the landing. Plaintiff did not testify that her vision was obscured by poor lighting.

There is a guard rail along the stair. There is no evidence whatever that the stair is "peculiar" in construction, defective in any way, or inherently dangerous. There was not any foreign matter on the floor to cause plaintiff to trip; she did not slip.

There was no sign posted at the entrance indicating a stairway. There had been an "exit" sign over the entrance but the inspector from the fire department had required its removal because the stairway led to the mezzanine office and might prove to be a trap in case of fire. The saleslady did not mention the stairway, but did direct plaintiff to turn to the right at the hallway. Plaintiff did not follow her instruction. It is true that plaintiff was not expecting to find a stairway when she pushed the curtain aside, but the stair was in plain view and she was entering the landing at floor level. The landing was wider than the entrance. Plaintiff admits that she took at least two steps after opening the curtain and there was nothing to prevent her seeing the stair if she had looked. Her eyesight was normal and she had no physical handicap. "Where a condition of the premises is obvious to an ordinarily intelligent person, generally there is no duty of the owner of the premises to warn of that condition." *Reese v. Piedmont, Inc.,* 240 N.C. 391, 395, 82 S.E. 2d 365; *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338.

Plaintiff relies on *Walker v. Randolph County,* 251 N.C. 805, 112 S.E. 2d 551. There the principle of diverted attention applies, but that principle is inapplicable upon the facts here presented. The instant

case is controlled by *Benton v. Building Co.*, 223 N.C. 809, 28 S.E. 2d 491; *Porter v. Niven*, 221 N.C. 220, 19 S.E. 2d 864. Plaintiff has failed to show any negligence on the part of the defendant which could be a proximate cause of her injuries.

Affirmed.