DALLAS SWINSON, Plaintiff v. LEJEUNE MOTOR COMPANY, INC., Defendant

No. COA00-1447

(Filed 18 December 2001)

**Premises Liability— customer's trip and fall in parking lot— indentation in asphalt pavement—directed verdict**

The trial court erred in a negligence case by granting a directed verdict under N.C.G.S. § 1A-1, Rule 50 in favor of defendant company arising out of an incident where plaintiff customer tripped, fell, and broke her arm based on her failure to see an indentation in the asphalt pavement while walking in the company's parking lot to get her car, because: (1) there are factual questions as to whether the condition of the pavement was open and obvious; and (2) there is conflicting evidence as to whether plaintiff acted as a reasonable person using ordinary care for her own safety under similar circumstances.

Judge McCULLOUGH dissenting.

Appeal by plaintiff from judgment entered 22 August 2000 by Judge Steve A. Balog in Superior Court, Onslow County. Heard in the Court of Appeals 10 October 2001.

*Jeffrey S. Miller, for plaintiff-appellant.*

*Wallace, Morris & Barwick, P.A., by P.C. Barwick, Jr., for defendant-appellee.*

WYNN, Judge.

To grant a directed verdict for a defendant under N.C. Gen. Stat. § 1A-1, Rule 50, the trial court must determine that the evidence, when considered in the light most favorable to the plaintiff, was insufficient for submission to the jury. *Smith v. Wal-Mart Stores, Inc.*, 128 N.C. App. 282, 495 S.E.2d 149 (1998). In this appeal, Dallas Swinson argues that a jury should have been allowed to determine whether her trip and fall resulted from an obvious condition, and whether she was contributorily negligent in causing her injury. Since the record shows controverted issues of fact for a jury to decide, we reverse the trial court's directed verdict favoring defendant.

This appeal arises from allegations that after having her car serviced by Lejeune Motor Company, Ms. Swinson tripped, fell and broke her arm while walking in the company's parking lot to get her car. However, at the close of her evidence during the trial, the trial court granted directed verdict in favor of Lejeune Motor stating that "the plaintiff has failed to offer any evidence from which a jury might find actionable negligence on the part of the defendant and the plaintiff's evidence shows that the plaintiff was contributorily negligent as a matter of law."

In ruling on a motion for directed verdict under N.C. Gen. Stat. § 1A-1, Rule 50, the trial court must consider "whether the evidence, when considered in the light most favorable to the plaintiff, was sufficient for submission to the jury." *Smith v. Wal-Mart Stores, Inc.*, 128 N.C. App. at 285, 495 S.E.2d at 149. "The plaintiff must receive the benefit of every inference which may reasonably be drawn in his favor." *Hill v. Williams*, 144 N.C. App. 45, 54, 547 S.E.2d 472, 477 (2000). The trial court should deny a motion for directed verdict when it finds any evidence more than a scintilla to support plaintiff's prima facie case. *See Broyhill v. Coppage*, 79 N.C. App. 221, 339 S.E.2d 32 (1986); *Clark v. Moore*, 65 N.C. App. 609, 309 S.E.2d 579 (1983).

"Directed verdict in a negligence case is rarely proper because it is the duty of the jury to apply the test of a person using ordinary care." *Stallings v. Food Lion, Inc.*, 141 N.C. App. 135, 138, 539 S.E.2d 331, 333 (2000). "[A] landowner has a duty to any lawful visitor on his property 'to take reasonable precautions to ascertain the condition of [his] property and to either make it reasonably safe or give warnings as may be reasonably necessary to inform . . . of any foreseeable danger.'" *Hussey v. Seawell*, 137 N.C. App. 172, 175, 527 S.E.2d 90, 92 (2000) (quoting *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 161,

516 S.E.2d 643, 645, *cert. denied,* 351 N.C. 107, 541 S.E.2d 148 (1999)). Moreover, a store owner has a duty of "ordinary care to keep in a reasonably safe condition those portions of its premises which it may expect will be used by its customers during business hours, and to give warning of hidden perils or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision." *Raper v. McCrory-McLellan Corp.,* 259 N.C. 199, 203, 130 S.E.2d 281, 283 (1963). However, "[t]here is no duty to protect a lawful visitor against dangers which are either known to him or so obvious and apparent that they reasonably may be expected to be discovered." *Lorinovich v. K Mart Corp.,* 134 N.C. App. at 162, 516 S.E.2d at 646.

Applying this case law which requires looking at the evidence in the light most favorable to Ms. Swinson, we hold that she presented sufficient evidence to submit this case to the jury. The record reveals there are factual questions as to whether the condition in the sidewalk was open and obvious. In their brief, Lejeune Motor Company argued that the condition of the pavement was obvious because nothing blocked the view of where Ms. Swinson was walking. It contended that Ms. Swinson should have or could have seen any defect, hole or elevation in the pavement and avoided the area. The president of Lejeune Motor, Leonard O. Stevenson, described the condition in the pavement where Ms. Swinson fell as being "probably three-quarters of an inch to an inch." Mr. Stevenson testified that the area was not a hole, where Ms. Swinson fell but that the area was raised or elevated. Mr. Stevenson was aware that the condition was present in the parking lot for many years and had never taken any steps toward repairing it or providing warnings. Mr. Stevenson also testified that he did not see Ms. Swinson fall, and personally he did not know where she fell in the parking lot.

At trial, Ms. Swinson testified that on the day of the incident, she was looking for her car and did not see the depression. She stated that she "just stepped into it." She referred to the depression as a hole, and stated that "I didn't look back to see how deep it was." She also testified that no one warned her about the hole in the parking lot. Indeed, the depression was in the asphalt pavement of the parking lot. The asphalt had come off the concrete and the depression was eight to twelve inches wide and several feet long. Moreover, there were no markers to indicate its presence. After a careful review of the record, we find that the resolution of these factual issues are for the jury to discern. "Contradictions or discrepancies in the evidence even when arising from plaintiff's evidence must be resolved by the jury

rather than the trial judge." *Clark v. Bodycombe*, 289 N.C. 246, 251, 221 S.E.2d 506, 510 (1976).

In her final argument, Ms. Swinson contends that the trial court erred in granting defendant's motion for directed verdict on the grounds that plaintiff's evidence did not show that plaintiff was con-tributorily negligent as a matter of law. For issues of contributory negligence, a motion for directed verdict is appropriate when the "plaintiff's evidence, considered in the light most favorable to him, together with inferences favorable to him that may be reasonably drawn therefrom, so clearly establishes the defense of contributory negligence that no other conclusion can reasonably be drawn." *Wilburn v. Honeycutt*, 135 N.C. App. 373, 375, 519 S.E.2d 774, 775 (1999). "Consequently, the issue of contributory negligence is ordinarily a question for the jury rather than an issue decided as a matter of law." *Hill v. Williams*, 144 N.C. App. at 56, 547 S.E.2d at 479.

"As a general rule, one who has capacity to understand and avoid a known danger and fails to take advantage of that opportunity . . . is chargeable with contributory negligence." *Presnell v. Payne*, 272 N.C. 11, 13, 157 S.E.2d 601, 602 (1967).

> Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care . . . he is guilty of contributory negli-gence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury.

*Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965). "Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as . . . where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger." *Walker v. Randolph*, 251 N.C. 805, 808, 112 S.E.2d 551, 553 (1960). When a plaintiff does not discover and avoid an obvious defect, that plaintiff will usually be considered to have been contributorily negligent as a matter of law. However, where there is some fact, condition, or circumstance which would or might divert the attention of an ordinarily prudent person from discovering or seeing an existing dangerous condition, the gen-eral rule does not apply. *Price v. Jack Eckerd Corp.*, 100 N.C. App. 732, 736, 398 S.E.2d 49, 52 (1990).

In the case at bar, again we note the controverted evidence of what Ms. Swinson actually saw or should have seen in the exercise of ordinary care. Ms. Swinson testified that she was looking for her automobile in defendant's parking lot. When she initially surrendered her car at Lejeune Motor she was at the entrance to the service department. However, when the repairs were completed, no one told her where her car was located. It was difficult for Ms. Swinson to find her car in the parking lot because her car was white and there were a lot of white cars in the lot. Lejeune Motors argues that plaintiff should have or could have seen the condition of the parking lot because there was nothing blocking her view of the area where she was walking.

"The basic issue with respect to contributory negligence is whether the evidence shows that, as a matter of law, plaintiff failed to keep a proper lookout for [her] own safety." *Wal-Mart*, 128 N.C. App. at 287, 495 S.E.2d at 152 (citing *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 468, 279 S.E.2d 559, 563 (1981)). The question is not whether a reasonably prudent person would have seen a depression in the parking lot had he or she looked but whether a person using ordinary care for his or her own safety under similar circumstances would have looked down at the condition of the pavement. *See Smith v. Wal-Mart*, 128 N.C. App. at 287, 495 S.E.2d at 152.

Applying these principles to this case, the question is whether the evidence in the light most favorable to the plaintiff allows no reasonable inference except her negligence; i.e., whether "a reasonably prudent and careful person exercising due care for his or her safety would have looked down" and seen the indentation of the pavement. *Id.* Because there is conflicting evidence of whether or not Ms. Swinson acted as a reasonably prudent person would have acted under like circumstance, this is an issue for a jury to resolve. *Id.* Directed verdict is not appropriate for defendant because the evidence is insufficient, as a matter of law, to support a verdict for the moving party. *See Hill v. Williams, supra.*

The dissent's comparison to *Grady v. J.C. Penney Co.*, 260 N.C. 745, 133 S.E.2d 678 (1963), fails to note the obvious difference between a plaintiff failing to see a stairway and the case at bar, where the plaintiff did not see an indentation in asphalt pavement. An appellate court examining the cold record would indeed find it quite difficult to believe that plaintiff would not see a stairway in front of her; in the case such as the one at hand, however determining whether a plaintiff could not see an indentation in a pavement of the size and

color of this one requires a jury voice; not ours. Moreover, recently our Court in *Barber v. The Presbyterian Hospital*, 147 N.C. App. 86, 555 S.E.2d 303 (2001), held that the trial court erred in granting a directed verdict for defendant, where the plaintiff was unfamiliar with the layout of the hospital and had never gone down the staircase and through the doorway in question. When the plaintiff pushed the door open, she looked straight ahead and stepped through the doorway. As she stepped forward with her left foot to go through the door, she lost her balance and fell forward; she twisted her ankle and landed on her left knee. Our Court distinguished *Barber* from *Grady* by stating that "[I]n the present case, plaintiff did not take any steps before falling down, and the step down was not in plain view when she opened the door." Our Court in *Barber* pointed out that the plaintiff looked straight ahead as she pushed the bar on the door and proceeded through the doorway. Based on those facts, our Court in Barber concluded that:

> It is not for us to say whether plaintiff behaved reasonably. We believe that "[r]easonable men may differ as to whether plaintiff was negligent at all . . . . What would any reasonably prudent person have done under the same or similar circumstances? Only a jury may answer that question . . . ."

*Barber* (quoting *Rappaport*, 296 at 387, 250 S.E.2d at 249). In the present case, we also find that is not for us to say whether Ms. Swinson behaved reasonably.

"When more than one interpretation of the facts is possible the issues of negligence and contributory negligence are matters to be decided by a jury." *Maness v. Fowler-Jones Const. Co.*, 10 N.C. App. 592, 179 S.E.2d 816, *cert. denied*, 278 N.C. 522, 180 S.E.2d 610 (1971). Based on the foregoing, we must conclude that Ms. Swinson is entitled to a new trial.

Reversed.

Judge BRYANT concurs.

Judge McCULLOUGH dissents in a separate opinion.

McCULLOUGH, Judge, dissenting.

The majority cites the correct law and appropriate standard for reviewing directed verdicts in negligence and contributory negligence

cases, but holds that there was sufficient evidence of a question of fact to go to the jury. Because I would hold that there were no questions of fact for the jury, I respectfully dissent.

"As a general proposition, there is no duty to protect a lawful visitor against dangers which are either known to him or so obvious and apparent that they reasonably may be expected to be discovered." *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 162, 516 S.E.2d 643, 646 (1999).

"For issues of contributory negligence, a motion for directed verdict is appropriate when the 'plaintiff's evidence, considered in the light most favorable to him, together with inferences favorable to him that may be reasonably drawn therefrom, so clearly establishes the defense of contributory negligence that no other conclusion can reasonably be drawn.' " *Wilburn v. Honeycutt*, 135 N.C. App. 373, 375, 519 S.E.2d 774, 775 (1999) (quoting *Peeler v. Railway Co.*, 32 N.C. App. 759, 760, 233 S.E.2d 685, 686 (1977)).

The majority held that there are factual questions as to whether the condition in the sidewalk was open and obvious, and whether plaintiff acted as a reasonably prudent person would have acted.

The record shows that the president of Lejeune Motors testified that the place in the parking lot in which plaintiff fell was three-quarters of an inch to an inch deep, eight to twelve inches wide, and several feet long. The judge had photographs that were admitted into evidence which showed the place plaintiff "stubbed her toe" and fell.

In the majority's review of plaintiff's testimony, it recites the facts that she was not warned by employees or markers about the potential irregularities in the parking lot. Plaintiff was just looking for her car and fell.

Further review of the record shows the rest of the picture that the trial court had before it. In response to the question of why she did not see the hole, plaintiff testified, "I wasn't looking for a hole. I was looking for the car." The record shows that the area in which plaintiff fell was an open area, anywhere from 30 to 70 feet. Plaintiff testified that:

> [PLAINTIFF]: I come out of the door and looked around, and I saw these white cars parked over to the right, and I went over to the right to look for [her car].
>
> . . . .

And I didn't see it over where they park—they park it at a lot of times, so I looked to the right and looked over that way and finally saw it. About that time, I fell in the hole.

Further testimony followed:

[QUESTION]: All right. Now, you had been to the dealership on numerous occasions, had you not?

[PLAINTIFF]: Yes, sir.

[QUESTION]: In fact, y'all had bought several cars from this dealership, had you not?

[PLAINTIFF]: Yes.

[QUESTION]: And on the day in question here, you took [her car] there, I believe, for some maintenance and also a warranty item?

[PLAINTIFF]: Yes, sir.

[QUESTION]: Now, the weather was dry, pretty, was it not?

[PLAINTIFF]: Yes, sir.

[QUESTION]: Parking lot at the time of this accident was dry?

[PLAINTIFF]: Yes, sir.

[QUESTION]: When you left—when you were given the keys to the vehicle—you said you paid your bill and were given the keys?

[PLAINTIFF]: Yes, sir.

[QUESTION]: And you walked out of the service door?

[PLAINTIFF]: Yes, sir.

[QUESTION]: Out into the parking lot and took a right; is that right?

[PLAINTIFF]: Yes, sir.

[QUESTION]: And started looking for your car?

[PLAINTIFF]: Sure, did.

[QUESTION]: There were no cars parked in the area you were walking in, were there?

[PLAINTIFF]: No, sir.

[QUESTION]: I believe I asked you earlier about the distance. If there were testimony in this case that the distance from the point you were walking out to where the raised—the asphalt is is [sic] about 50 feet—45 or 50 feet, you would not object to that?

[PLAINTIFF]: It could be that. I do not know for sure.

[QUESTION]: And while you were walking that distance, whatever it was, you were looking for your car?

[PLAINTIFF]: Yes, sir.

[QUESTION]: Were you talking to anybody?

[PLAINTIFF]: No, sir. I was alone.

[QUESTION]: Anything to keep you from looking down to see—

[PLAINTIFF]: No, sir.

[QUESTION]: —what was on the pavement?

[PLAINTIFF]: Just looking for the car.

I do not find that sufficient evidence of a question of fact existed and thus would vote to affirm the trial court's decision. This case seems to be more like *Grady v. Penney Co.*, 260 N.C. 745, 133 S.E.2d 678 (1963). In that case, the plaintiff fell down a flight of stairs. There was no sign posted indicating a stairway, and an exit sign previously above the door had been removed. No employee had mentioned or warned the plaintiff of the stairway. Plaintiff admitted to taking two steps on the stairs before falling and that there was nothing to prevent her from seeing the stairs if she had just looked. The Court held that the stairs were in plain view and obvious, and I would hold the same here. Plaintiff had the "capacity to exercise ordinary care for [her] own safety against injury," and was required by law to do so. *See Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965).

The majority's reliance on *Barber v. The Presbyterian Hospital*, 147 N.C. App. 86, —— S.E.2d —— (6 November 2001) is misplaced. The plaintiff in *Barber* was entering a doorway in which the door completely blocked the potential dangerous condition. The first step could not be seen prior to opening the door regardless of due diligence by the plaintiff in keeping a lookout. The step dropped down without warning. Thus, there are no factual similarities between *Barber* and the instant case where the accident occurred in an open

parking lot on a clear, dry day with no obstructions in view. Likewise, the majority's quotation of *Walker v. Randolph*, 251 N.C. 805, 112 S.E.2d 551 (1960) adds little to the case as there is no evidence of a "sudden condition." The evidence shows the plaintiff was eye searching the parking lot for her car and was inattentive to where she was walking at the time she fell. *See Benton v. Building Co.*, 223 N.C. 809, 28 S.E.2d 491 (1943).

For the reasons set forth above I would affirm the trial judge's granting of a directed verdict for defendant as I believe plaintiff's testimony with the other evidence in the record establishes contributory negligence as a matter of law.