IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-223

Filed 16 May 2023

Brunswick County, No. 20 CVS 1131

DEBRA CULLEN, Plaintiff,

v.

LOGAN DEVELOPERS, INC., Defendant.

Appeal by Plaintiff from judgment entered 14 October 2021 by Judge Henry L. Stevens in Brunswick County Superior Court. Heard in the Court of Appeals 20 September 2022.

> *Ricci Law Firm, P.A., by Meredith S. Hinton and William J. Patterson, for plaintiff-appellant.*
>
> *McAngus Goudelock & Courie PLLC, by Jeffery I. Stoddard, for defendant-appellee.*

MURPHY, Judge.

The trial court improperly granted Defendant's motion for summary judgment and dismissed Plaintiff's negligence claim where the forecast of evidence showed a genuine issue of material fact as to whether Plaintiff knew or should have known that the scuttle hole Defendant constructed in her attic walk space had not been closed but was concealed with drywall and thus presented an unsafe condition. As the forecast of evidence must be viewed in the light most favorable to Plaintiff, the trial court erred in concluding Plaintiff was contributorily negligent as a matter of law.

The forecast of evidence likewise showed a genuine issue as to whether Defendant's conduct in visually concealing the scuttle hole with drywall amounted to gross negligence. We vacate the trial court's order.

## **BACKGROUND**

Defendant general contractor Logan Developers, Inc. contracted to build a new home for Plaintiff Debra Cullen and her husband in Southport. The home was a model home that Defendant designed. During a final walkthrough of the home nearing the end of construction, Plaintiff and her husband noticed that Defendant had cut a new scuttle hole to access the attic through the area of the existing attic walk space and the master bathroom ceiling. Plaintiff and her husband complained to Defendant that the scuttle hole was an eyesore and they wanted it gone. Defendant's agent told Plaintiff the local building code required the scuttle hole be there; however, "[t]o meet the Cullens halfway," according to Defendant, it agreed to cover the scuttle hole with drywall and concealed its appearance from the master bathroom ceiling.

During their first week in the home, on 1 May 2019, Plaintiff walked into the attic and began taking pictures of areas where she wanted to add plywood flooring to the existing walk space but where there was only insulation. Plaintiff stepped onto the area of the walk space that Defendant cut for the scuttle hole and fell through the ceiling of the master bathroom. Plaintiff suffered serious injuries, including a broken ankle and thumb.

Plaintiff acknowledged at deposition that, if she had looked down at the scuttle hole, she likely "would have seen insulation and [she] would not have stepped in it." However, according to Plaintiff, Defendant never spoke with her about what covering the scuttle hole would entail or "the details of what work they were going to do[.]" Instead, Plaintiff stated that Defendant's agent's "exact words were 'by closing, you'll never know [the scuttle hole] was there.'" Plaintiff testified that, in light of Defendant's statements, she did not think to look down at the area because she "thought that [w]hole thing was plywood like it was in the beginning . . . ."[1]

On 15 October 2020, Plaintiff filed suit in Brunswick County, asserting one count each of negligence and gross negligence. Plaintiff alleged Defendant was negligent and grossly negligent in, *inter alia*, (1) failing to comply with applicable building codes, (2) failing to construct the home in a fit and habitable condition and failing to properly inspect and repair the scuttle hole, and (3) failing to adequately warn Plaintiff of the unsafe condition. Plaintiff sought recovery for her injuries,

---

[1] Defendant answered the following to an interrogatory regarding its placement of the scuttle hole:

> On [28 December] 2018, the rough-in inspection noted that the distance from the attic entry to the mechanical air handler unit was greater than 20 feet. According to the [building] code, if the air handler is more than 20 feet from the access point, the entire walk path to the unit must have six feet of head clearance. Some of the framing in the Cullen's house lowered the head clearance below six feet. This required a scuttle hole or another access to the mechanic air handler unit. . . . The only location that would allow for access within 20 feet along with the clearance requirement was the master bathroom [area of the attic].

including medical expenses and lost income and Social Security benefits, as well as punitive damages for Defendant's gross negligence.

Defendant answered, alleging Plaintiff was aware of the scuttle hole and that "the framed opening from the attic side was left open, not concealed in any way, and clearly visible to someone in the attic." Defendant asserted affirmative defenses, including contributory negligence, assumption of risk, and completion and acceptance.[2]

On or about 1 July 2021,[3] Defendant filed a motion for summary judgment seeking Plaintiff's claims be dismissed and judgment be entered in its favor on all counts. By order entered 14 October 2021, the trial court concluded the forecasted evidence, even in the light most favorable to her, showed Plaintiff was contributorily negligent as a matter of law, thus barring her negligence claim, and that Plaintiff had alleged "insufficient facts . . . to support a conclusion of gross negligence on behalf of Defendant." The trial court granted Defendant's motion for summary judgment and dismissed Plaintiff's claims. Plaintiff timely appealed.

## ANALYSIS

We review a trial court's order granting summary judgment *de novo*. *Proffitt v. Gosnell*, 257 N.C. App. 148, 151 (2017). "Under a *de novo* review, the reviewing

---

[2] Defendant also alleged affirmative defenses of failure to mitigate and lack of proximate cause.

[3] Defendant's motion for summary judgment is not file stamped, but there was no dispute regarding the filing of the motion at the hearing.

court considers the matter anew and freely substitutes its own judgment for that of the lower court." *Id.* (marks omitted).

Summary judgment is appropriate under Rule 56 of the North Carolina Rules of Civil Procedure where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment bears the burden of showing that no triable issue of fact exists, and may satisfy its burden by proving: (1) that an essential element of the non-moving party's claim is nonexistent; (2) that discovery indicates the non-moving party cannot produce evidence to support an essential element of his claim; or (3) that an affirmative defense would bar the non-moving party's claim.

*Id.* at 151 (marks omitted); N.C.G.S. § 1A-1, Rule 56(c) (2021).

"[S]ummary judgment is proper in a negligence case where the forecast of evidence fails to show negligence on [the] defendant's part, or establishes [the] plaintiff's contributory negligence as a matter of law." *Stansfield v. Mahowsky*, 46 N.C. App. 829, 830, *disc. review denied*, 301 N.C. 96 (1980); *see also McCauley v. Thomas*, 242 N.C. App. 82, 90 (2015) ("The issue of gross negligence should be submitted to the jury if there is substantial evidence of the defendant's wanton and/or [willful] conduct."). Summary adjudication of such claims, however, "is normally inappropriate due to the fact that the test of the reasonably prudent person is one which the jury must apply in deciding the questions at issue." *Barber v. Presbyterian*

*Hosp.*, 147 N.C. App. 86, 88 (2001). Moreover, the issue of whether a plaintiff was contributorily negligent "is ordinarily a question for the jury; such an issue is rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached." *Proffitt,* 257 N.C. App. at 152.

## A. Contributory Negligence

For the purposes of this appeal, Defendant concedes that its actions may have been negligent, but maintains that, "[r]egardless of whether it was negligent to place the scuttle hole, cover the scuttle hole with drywall, fail to cover the attic side of the scuttle hole with plywood, or whether any of these actions were a code violation, the evidence is unequivocal that [Plaintiff] was negligent in stepping backwards in an attic while unreasonably choosing to not watch where she was stepping." The trial court, in its order, concluded that Plaintiff's "own negligence clearly contributed to her" injuries in that the forecasted evidence "affirmatively show[ed]" she failed "to keep a proper lookout for her own safety while stepping backwards and off the plywood walking path in the attic and into an area that she knew was unsafe."

We disagree and conclude the forecast of evidence shows a genuine issue of fact exists as to whether Plaintiff knew or should have known there was an unsafe condition in the area where she was walking in the attic. The trial court therefore erred in concluding Plaintiff was contributorily negligent as a matter of law for failing to look down and behind her before she stepped in that area.

The doctrine of contributory negligence provides that "a plaintiff cannot recover for injuries resulting from a defendant's negligence if the plaintiff's own negligence contributed to [her] injury." *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 483 (2020). Contributory negligence is "conduct which fails to conform to an objective standard of behavior—the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Proffitt*, 257 N.C. App. at 152 (emphasis omitted).

A successful defense requires "a want of due care on the part of the plaintiff[.]" *Id.* (marks omitted). Oftentimes, "[t]he basic issue with respect to contributory negligence is whether the evidence shows that, as a matter of law, [the] plaintiff failed to keep a proper lookout for her own safety. The question is . . . whether a person using ordinary care for his or her own safety under similar circumstances would have looked down at the floor." *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 468 (1981), *overruled on other grounds*, *Nelson v. Freeland*, 349 N.C. 615 (1998); *see also Proffitt*, 257 N.C. App. at 164 ("[I]t is well settled that a person is contributorily negligent if he or she knows of a dangerous condition and voluntarily goes into a place of danger."). Our Supreme Court has further explained that "one is not required to anticipate the negligence of others; in the absence of anything which gives or should give notice to the contrary, one is entitled to assume and to act on the assumption that others will exercise ordinary care for their own or others' safety." *Norwood*, 303

N.C. at 469. Plaintiff's behavior must be "compared to that of a reasonable person under similar circumstances." *Draughon*, 374 N.C. at 484.

In this case, Defendant affirmed its agent

> told [Plaintiff and her husband] that wherever there was subflooring in the attic they could place storage bins but that they were prohibited by code from adding any additional subflooring to the attic. *[Plaintiff and her husband] knew from these conversations they could not step off the subflooring in the attic.* . . . [Defendant told Plaintiff the scuttle hole] was required by code so [Defendant] could not cover it with plywood. To meet [Plaintiff and her husband] halfway, [Defendant's agent] told them he could put drywall over the scuttle hole.

(Emphasis added). But Plaintiff's forecasted evidence, if believed, shows the only time Plaintiff walked in the attic prior to the accident was before Defendant installed the scuttle hole, and the area where Defendant cut the scuttle hole was within the area of what was once a walk space when Plaintiff was previously in the attic. *See Norwood*, 303 N.C. at 469 (emphasis added) ("Applying this principle to the facts of the case *sub judice*, [the] plaintiff was contributorily negligent only if in the exercise of ordinary care she should have seen *and appreciated the danger of* the protruding platform."). Plaintiff explained in her answers to interrogatories that her husband had previously

> walked in and saw the hole in the [master bathroom] ceiling. He asked [Defendant] what it was. [Defendant] told him not to worry, that they would fix the hole as soon as the inspection was completed. It was our understanding that this was fixed prior to us closing on the house.

Plaintiff stated she believed this meant Defendant would "replace[] the plywood that [Defendant] had . . . removed to" cut the scuttle hole. Plaintiff further averred that "[t]he *hole* was something that [Defendant] told us would be fixed prior to us closing on the house." (Emphasis added).

We must view the evidence in the light most favorable to Plaintiff, and these statements create a genuine issue of material fact as to whether Plaintiff knew the area remained unsafe such that she was negligent in failing to look out for her safety while walking. *See Dobson v. Harris*, 352 N.C. 77, 83 (2000) (citations omitted) ("The movant's papers are carefully scrutinized; those of the adverse party are indulgently regarded. All facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party."); *Maness v. Fowler-Jones Constr. Co.*, 10 N.C. App. 592, 598 ("While . . . there may have been other, safer procedures which [the] plaintiff could have followed . . . , this would not as a matter of law require a holding that [she] was negligent in doing what [she] did."), *cert. denied*, 278 N.C. 522 (1971). The merits of Defendant's affirmative defense and any evidence that Plaintiff knew the danger existed present a question of fact for the jury to decide. *See, e.g., id.*; *Duval v. OM Hospitality, LLC*, 186 N.C. App. 390, 395 (2007) (marks omitted) ("[S]ummary judgment is rarely appropriate in cases of negligence or contributory negligence."); *see also Proffitt*, 257 N.C. App. at 152 ("Contradictions or discrepancies in the evidence even when arising from the plaintiff's evidence must be resolved by the jury rather than the trial judge.").

We note further the cases Defendant cites in support of its argument pertaining to Plaintiff's knowledge in this case all involve plaintiffs employed and working in a specialized or dangerous line of work, or involve falls in public areas where the plaintiff had no reasonable expectation the area would be free of dangers. *See Swinson v. Lejeune Motor Co.*, 147 N.C. App. 610, 618-19 (2001) (McCullough, J., dissenting) (affirming finding of contributory negligence where the plaintiff fell in a car dealership parking lot), *reversed for reasoning stated in dissenting opinion*, 356 N.C. 286 (2002); *Holland v. Malpass*, 266 N.C. 750, 752 (1966) ("The plaintiff's evidence . . . shows that the plaintiff, an experienced garage worker, failed to look before he stepped where he should have anticipated some obstruction was likely."); *Lee v. Carolina Upholstery Co.*, 227 N.C. 88, 89 (1946) ("[The P]laintiff was an experienced truckman and was doing the work in his own way."); *Dunnevant v. Southern Ry. Co.*, 167 N.C. 232, 233 (1914) (sustaining motion to nonsuit where the plaintiff fell at a train station late at night after walking off into the dark without his lantern).

Our Supreme Court held in *Holland* that "[w]hat constitutes reasonable care depends upon the nature of the business and the normal use in such business establishments of like areas." *Holland*, 266 N.C. at 752. Plaintiff's state of mind is relevant in determining whether she conducted herself in a reasonably prudent manner; in this case, Plaintiff's state of mind was that of someone walking into her brand-new home she contracted with Defendant to build, subject to the safety

standards set forth in the applicable building codes, as well as any contractual assurances and warranties. She was also aware of the area of attic previously covered by plywood flooring, prior to the creation of the scuttle hole, and aware of Defendant's assurance the scuttle hole had been fixed prior to closing on the home. *See Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 377 (marks omitted) ("The standard is always the rule of the prudent man or the care which a prudent man ought to use under like circumstances. What reasonable care is, of course, varies in different cases and in the presence of different conditions."), *aff'd*, 307 N.C. 267 (1982); *see also Crescent Univ. City Venture, LLC v. Trussway Mfg., Inc.*, 376 N.C. 54, 61-62 (2020) (noting that, even in cases involving only economic loss by "subsequent home purchaser[s]," the plaintiff may "recover against the builder of a home in negligence" on grounds of public policy specific to "the plight of residential homebuyers[,]" specifically that "[t]he ordinary purchaser of a home is not qualified to determine when or where a defect exists"). Plaintiff's forecast of evidence, taken as true, prevented a conclusion by the trial court that Plaintiff was contributorily negligent as a matter of law by failing to look out for her safety. The trial court therefore erred in concluding Plaintiff was contributorily negligent and dismissing Count I of Plaintiff's complaint.

### B. Plaintiff's Claim of Gross Negligence

Plaintiff next challenges the trial court's conclusion that Plaintiff alleged insufficient facts to support a finding of gross negligence.

Gross negligence "consists of wanton conduct done with conscious or reckless disregard for the rights and safety of others. An act is wanton when it is . . . done needlessly, manifesting a reckless indifference to the rights of others." *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 490 (citations and marks omitted), *disc. review denied*, 766 S.E.2d 646 (2014).

Our Supreme Court

> has described the difference between ordinary and gross negligence as follows:
>
> [T]he difference between the two is not in degree or magnitude of inadvertence or carelessness, but rather is intentional wrongdoing or deliberate misconduct affecting the safety of others. An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others.

*Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 13 (2012) (quoting *Yancey v. Lea*, 354 N.C. 48, 53 (2001)).

> In determining or defining gross negligence, this Court has often used the terms willful and wanton conduct and gross negligence interchangeably to describe conduct that falls somewhere between ordinary negligence and intentional conduct. We have defined gross negligence as wanton conduct done with conscious or reckless disregard for the rights and safety of others. An act is wanton when it is done of wicked purpose, *or when done needlessly*, manifesting a reckless indifference to the rights of others. Our Court has defined willful negligence in the following language:
>
> An act is done wilfully when it is done *purposely and deliberately in violation of law* or when it is done knowingly

and of set purpose, *or when the mere will has free play, without yielding to reason.* The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed on the person by operation of law.

*Green v. Kearney*, 217 N.C. App. 65, 70 (2011) (emphases added) (quoting *Yancey*, 354 N.C. at 52-53). "Wanton and willful negligence rests on the assumption that [the defendant] knew the probable consequences, but was recklessly, wantonly or intentionally indifferent to the results." *Wagoner v. R.R.*, 238 N.C. 162, 168 (1953).

Plaintiff alleged the following "intentional wrongdoing or deliberate misconduct[,]" *Green*, 217 N.C. App. at 75, in support of her claim of gross negligence:

4. Prior to Plaintiff taking possession of the Premises, Defendant left a hole in the ceiling of the master bathroom in order for it to be inspected.

5. Defendant assured Plaintiff that the hole would be fixed after the inspection and before her taking possession of the Premises.

6. On or about [25 April 2019], Plaintiff began occupying the Premises.

7. The hole in the ceiling of the master bathroom appeared to have been properly repaired and was no longer visible to Plaintiff.

. . . .

10. Plaintiff had no knowledge or notice of any unresolved dangerous condition of the attic floor/master bathroom ceiling that would cause it to collapse.

. . . .

25.     The conduct of Defendant constituted gross negligence and/or willful and wanton disregard for the rights and safety of Plaintiff.

26.     By reason of the conduct of Defendant, Plaintiff is entitled to punitive damages.

Defendant's operations director stated the following at Defendant's Rule 30 deposition:

> Q.     Do you think [covering the scuttle hole with drywall] was a right decision for [Defendant] to make?
>
> A.     No. Absolutely not. I told [our employee working on the site]—I said, that—whether we think it's necessary or not it is—was required by code. It was installed and inspected and it should have stayed.
>
> Q.     And so doing away with that would make the house not up to code?
>
> A.     Correct. If an inspector re-inspected that he would have—he would have found that in violation.
>
> Q.     Would that be a problem for [Defendant]?
>
> A.     Yes.
>
> Q.     Did [Defendant's employee] ever ask if he could do that?
>
> A.     He did not.

The forecasted evidence in this case thus contains allegations and averments which, if taken as true, show Defendant knew concealing the appearance of the

scuttle hole from the side of the master bathroom ceiling violated applicable building code, and otherwise knew concealing the hole posed a hazard, but did it anyway. *See Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 403 (2001) ("Conduct is wanton when it is carried out with a . . . reckless indifference."). While we acknowledge gross negligence "is a high threshold for liability," *Green*, 217 N.C. App. at 74 (marks omitted), viewing the materials in the light most favorable to Plaintiff, as we must, we hold the trial court erred in concluding Defendant was not grossly negligent as a matter of law. The forecasted evidence states a claim for gross negligence and raises a genuine issue of material fact whether Defendant's conduct surrounding the scuttle hole amounted to "wanton conduct done with conscious or reckless disregard for the . . . safety of others" such that it cannot be said Defendant was not grossly negligent as a matter of law.[4] *See Bullins v. Schmidt*, 322 N.C. 580, 583 (1988); *Beck*, 57 N.C. App. at 385 ("Plaintiff's evidence which tended to show numerous violations of the National Electrical Safety Code and of defendant's own standards was sufficient to merit the submission of the issue of punitive damages to the jury."); *cf. Bashford v. N.C. Licensing Bd. for General Contractors*, 107 N.C. App. 462, 466 (1992) (noting more than a violation of the building code is needed to establish gross negligence

---

[4] Since the forecasted evidence does not establish Plaintiff was contributorily negligent as a matter of law, Defendant's argument concerning Plaintiff's gross-contributory negligence likewise fails. *See McCauley*, 242 N.C. App. at 89 (citation omitted) ("[A] plaintiff's contributory negligence does not bar recovery from a defendant who is grossly negligent. Only gross contributory negligence by a plaintiff precludes recovery by the plaintiff from a defendant who was grossly negligent.").

under both N.C.G.S. § 87-11(a) and the common law).  Accordingly, the trial court erred in dismissing Count II of Plaintiff's complaint.

Lastly, Defendant's argument that Plaintiff has abandoned the available remedy of punitive damages by failing to discuss them in her Appellant Brief is misplaced.  The trial court dismissed Plaintiff's complaint, determining she was not entitled to relief as a matter of law.  The issue of to what relief she would be entitled is thus not before us.  Plaintiff specifically alleged willful and wanton conduct in Count II of her complaint for gross negligence in support of punitive damages.  If, from the evidence, the jury determines there was willful and wanton conduct on the part of Defendant amounting to gross negligence and Plaintiff was not contributorily negligent, Plaintiff may pursue punitive damages.  *See Beck*, 57 N.C. App. at 383 (marks omitted) ("Our Court has stated that under the common law of this State punitive damages may be awarded when the wrong is done willfully . . . or in a manner which evinces a reckless and wanton disregard of [the] plaintiff's rights.").

### CONCLUSION

For the foregoing reasons, we vacate the trial court's order granting Defendant's motion for summary judgment and remand for further proceedings.

VACATED AND REMANDED.

Chief Judge STROUD and Judge ZACHARY concur.